[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 15, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16032

_____

D. C. Docket No. 04-01279-CV-MHS-1

WILLIAM S. MANUEL,

Plaintiff-Counter-Defendant-Appellee,

versus

CONVERGYS CORPORATION,
CONVERGYS CUSTOMER MANAGEMENT GROUP, INC.,
CONVERGYS INFORMATION MANAGEMENT GROUP, INC.,

Defendants-Counter-Claimants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 15, 2005)

Before BIRCH, CARNES and FAY, Circuit Judges.

BIRCH, Circuit Judge:

There are three central issues in this appeal. First, we must decide whether the district court abused its discretion in entertaining a declaratory judgment action regarding a noncompetition agreement ("NCA") filed by William S. Manuel against Convergys Corporation and its subsidiaries (collectively "Convergys"). Second, we must decide whether the district court erred in ruling that Georgia has sufficient contacts with the declaratory judgment action to justify application of Georgia law to the NCA. Under Georgia law, the NCA is invalid and unenforceable. Third, we must decide whether the district court properly applied Georgia law in dismissing Convergys's trade secret counterclaim. Finding no reversible error, we AFFIRM.

## I. BACKGROUND

A large, publicly traded company with its principal place of business in Ohio, Convergys offers information management and customer management services worldwide. A subsidiary sells outsourced human resource services for large public and private employers ("HR outsourcing"). In 1999, Manuel joined this subsidiary as a sales manager, and in June 2003 he was promoted to director of sales. At all times during his employment with Convergys, Manuel lived and worked in Florida.

Pursuant to the promotion in 2003, Manuel signed the NCA. This agreement prohibits Manuel from competing with Convergys or soliciting its customers for two years following the termination of his employment. The NCA contains a choice-of-law provision requiring the application of Ohio law and states that any disputes related to the NCA may be brought in the state and federal courts of Hamilton County, Ohio.

On 12 March 2004, Manuel interviewed with Mellon Financial Corporation ("Mellon") for a position with its HR outsourcing sales team, working either in Atlanta, Georgia or Charlotte, North Carolina. While there is some factual dispute as to whether Manuel first chose to work in North Carolina, he eventually was offered the job in Georgia. As to the NCA, Manuel advised Mellon that he did not believe Convergys would view Mellon as a competitor and would not challenge his employment. Nevertheless, Manuel and Mellon discussed the possibility that Convergys might sue to enforce the NCA.

Manuel subsequently sought counsel. His newly hired lawyer concluded that the NCA constituted an illegal restraint of trade under Georgia law and that Manuel should therefore be free to work for Mellon in Georgia. Manuel's lawyer warned, however, that if Convergys obtained an Ohio judgment validating the NCA, a Georgia court would likely enforce it. The lawyer therefore recommended

that "the only thing [Manuel] could do to prevent this scenario would be to file first in Georgia." R3-17, Exh. F at 3.

After accepting Mellon's offer on 5 April 2004, Manuel met with the Georgia lawyers who would file this action. On 8 April 2004, Manuel resigned from Convergys, although he agreed to stay on until the middle of the month. During that time, Manuel told Convergys that he was not going to work for a competitor and that he had not accepted a job with another company. On 9 April 2004, Manuel signed an apartment lease in Georgia and obtained a Georgia driver's license. On 20 April 2004, Manuel filed suit against Convergys in Georgia seeking a declaration that the NCA was illegal, invalid, and unenforceable.

Six days later, a senior executive at Convergys told Manuel that he might be able to structure his job with Mellon so that he would not violate the NCA. Nevertheless, the lawsuit against Convergys proceeded. On 10 May 2004, Convergys removed the case to the U.S. District Court for the Northern District of Georgia. On the same day, Convergys filed suit against Manuel and Mellon in an Ohio state court for violation of the NCA and misappropriation of trade secrets. Subsequently, Convergys filed a counterclaim in this action that alleged misappropriation of trade secrets. The company also requested that the district court defer ruling on Manuel's motion for summary judgment pending resolution

4

of the Ohio action. The district court denied Convergys's motion and granted both Manuel's motion for summary judgment and Manuel's motion to dismiss Convergys's counterclaim.

## II. DISCUSSION

A. <u>The Declaratory Judgment Action</u>

The decision to hear a declaratory judgment action is reviewed for abuse of discretion. <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288, 115 S. Ct. 2137, 2144 (1995); <u>Old Republic Union Ins. Co. v. Tillis Trucking Co.</u>, 124 F.3d 1258, 1260 (11th Cir. 1997). The Supreme Court has described this discretion as "unique and substantial." <u>Wilton</u>, 515 U.S. at 286, 115 S. Ct. at 2142. "As we have stated previously, the abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." <u>Rasbury v. IRS</u>, 24 F.3d 159, 168 (11th Cir. 1994) (internal quotations omitted).

The factors relevant in deciding whether to hear a declaratory judgment action are equitable in nature. <u>See</u> <u>Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.</u>, 342 U.S. 180, 183, 72 S. Ct. 219, 221 (1952). As such, the Supreme Court has warned against a "rigid" and "mechanical" approach in applying the Federal Declaratory Judgments Act. <u>Id</u>. Our court has previously recognized convenience of the parties and the forum's connection with the controversy as relevant, albeit

5

nonexclusive, factors.  See Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir. 1967).  Some courts simply apply the same general factors that are considered in a motion to transfer under 28 U.S.C. § 1404(a).[1]  See, e.g., Nat'l Patent Dev. Corp. v. Am. Hosp. Supply Corp., 616 F. Supp. 114, 118 (S.D.N.Y. 1984) ("Essentially the same factors that are of significance on a motion to stay a 'second-filed' action come into play on a motion to transfer under [28 U.S.C.] section 1404(a).").

Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.  See, e.g., United States Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 488 (8th Cir. 1990) (describing the first-filed rule as "well-established"); Church of Scientology of Cal. v. United States Dep't of Defense, 611 F.2d 738, 750 (9th Cir. 1979) (noting that the first-filed rule "should not be disregarded lightly").  We are no exception.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,  675 F.2d 1169, 1174 (11th Cir. 1982).  Moreover, we require that the party objecting to

---

[1]Section 1404 factors include (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.  See, e.g., Gibbs & Hill, Inc. v. Harbert Int'l, Inc., 745 F. Supp. 993, 996 (S.D.N.Y. 1990).

jurisdiction in the first-filed forum carry the burden of proving "compelling circumstances" to warrant an exception to the first-filed rule. Id.

In determining whether compelling circumstances exist, we have recognized that for declaratory judgment actions "one equitable consideration . . . is whether the . . . action was filed in apparent anticipation of the other pending proceeding." Ven-Fuel, Inc. v. Dep't of the Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982); see also Amerada Petroleum, 381 F.2d at 663 (noting that filing a declaratory judgment action in anticipation of suit in another forum "is an equitable consideration which the district court was entitled to take into account"). Even if a court finds that a filing is anticipatory, this consideration does not transmogrify into an obligatory rule mandating dismissal. See Ven-Fuel, 673 F.2d at 1195. Such a finding still remains one equitable factor among many that a district court can consider in determining whether to hear a declaratory judgment action. See id.; see also Wilton, 515 U.S. at 286, 115 S. Ct. at 2142.

In this case, Convergys argues that Ohio is the proper forum for full resolution of this action. Convergys's two central objections to the Georgia forum are (1) that Manuel lied to Convergys about his employment with Mellon to surreptitiously win a race to the courthouse, and (2) that Manuel engaged in improper forum shopping and selected a forum with a slight and manufactured

7

connection to the controversy. Central to our analysis is the fact that Georgia was the forum in which this action was filed first. See Merrill Lynch, Pierce, Fenner & Smith, 675 F.2d at 1174 (11th Cir. 1982) ("In the absence of compelling circumstances, the court initially seized of the controversy should be the one to decide the case."). We remain unconvinced that compelling circumstances exist to justify not only an exception to the well-established first-filed rule, but also to justify the abrogation of the district court's informed discretion.

As to the first objection, Convergys alleges that Manuel purposely lied about where he was going to work so that he could file suit in Georgia before Convergys was able to directly threaten him with imminent litigation in Ohio. In Convergys's view, Manuel won an illicit race to the courthouse and the district court thereby erred in rewarding him with a declaratory judgment action. While Manuel's behavior was not exemplary, it does not rise to a level that would require us to conclude that the district court abused its discretion. See Keener v. Convergys Corp., 342 F.3d 1264 (11th Cir. 2003). In Keener, which is strikingly similar to this case, a Convergys employee admittedly lied to the company about his future employment to avoid enforcement of a similar NCA. Id. at 1270. That employee then took a job with a competitor of Convergys in Georgia. Id. While there, he filed a declaratory judgment action challenging the validity of a NCA. Id. We

8

found that this misrepresentation, combined with Keener's preemptive declaratory suit, deprived Convergys of the opportunity to enforce a NCA in Ohio. Id. Nevertheless, we agreed with the district court's determination that "the application of Georgia law was not arbitrary or constitutionally impermissible because Convergys would be attempting to enforce the NCA against Keener, who is living and working in Georgia, where the effects would be felt." Id. at 1267-68. Having previously concluded, under very similar facts, that the application of Georgia law by the district court was neither arbitrary nor constitutionally impermissible, we conclude in this case that the initial decision to entertain the declaratory action by the district court is also not an arbitrary or impermissible decision.[2]

Additionally, the district court's conclusion that Manuel's filing was not improperly anticipatory has support in the record. Distinguishing Ven-Fuel, which upheld a decision to dismiss a declaratory judgment action when the action was filed the day after receipt of a letter promising judicial proceedings if an assessed penalty was not paid "forthwith," the district court reasonably concluded that a

_____

[2]In fact, the circumstances in Keener were arguably more favorable to Convergys, since the employee in Keener, unlike Manuel, actually worked for Convergys in Ohio and executed his employment agreement in Ohio before going to Georgia. See id. at 1268 n.2; see also Keener v. Convergys Corp., 205 F. Supp. 2d 1374, 1376 (S.D. Ga. 2002), rev'd on other grounds, Keener, 342 F.3d at 1271.

similar threat was not present in this case. See Ven-Fuel, 673 F.2d at 1195. At no point did Convergys threaten Manuel with specific legal proceedings. Instead, the district court found that Convergys did not immediately file suit to enforce the NCA against Manuel even after learning of his new employer, but continued to seek assurances that Manuel's job would not violate the agreement. While there undoubtedly was a reasonable apprehension that a controversy existed sufficient to satisfy the constitutional requirements for a declaratory judgment action, this is not equivalent to an imminent threat of litigation. Otherwise "each time a party sought declaratory [judgment] in one forum, a defendant filing a second suit in a forum more favorable to defendant could always prevail under the anticipatory filing exception." 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 132 (S.D.N.Y. 1994).

Even if Manuel were directly threatened, our precedent does not stand for the proposition that the district court was required to dismiss a declaratory judgment action when the action was filed in apparent anticipation of another proceeding. See Ven-Fuel, 673 F.2d at 1195. Instead, our precedent stands for the proposition that the district court did not abuse its discretion in relying on that fact to dismiss the action. Id. That choice, which involves number of considerations, remains vested in the district court absent a clear error of judgment. See Kerotest

10

Mfg., 342 U.S. at 183-84, 72 S. Ct. at 221.

As to the second objection, Convergys argues that the filing in Georgia constituted improper forum shopping. We agree with the district court that there is nothing inequitable in Manuel seeking legal advice and later choosing to work in a state that shared his view that the NCA was invalid and unenforceable. See McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1261 (5th Cir. 1983) ("The existence of these choices [among various jurisdictions] not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause."). Moreover, an analysis of the equitable considerations available to the district court does not compel the conclusion that Georgia's connections to this action are slight or manufactured. Several relevant considerations favor the Georgia forum. Apart from being the forum where the action was first filed, Manuel works and lives in Georgia, where the alleged violation of the NCA occurred. Additionally, many, if not most, of the potential witnesses that Convergys might have called in this action are located in Florida, a neighboring state to Georgia. The relative means of the parties also favor the Georgia forum. Manuel is a Georgia resident who chose a Georgia forum and his means are not comparable to Convergys's. Additionally, Convergys's counterclaim alleges that Manuel violated the Georgia Trade Secrets

11

Act by taking a job with Mellon in Georgia. Most of the documents and witnesses relating to this claim would likely be found in Georgia.

In contrast, several considerations disfavor the Ohio forum. The NCA was not executed in Ohio. Manuel did not have an office in Ohio. The alleged breach of the contract did not take place in Ohio. The location of documents and the ease of access to sources of proof do not favor Ohio. Furthermore, the district court noted that there were serious questions as to whether the Ohio has personal jurisdiction over Manuel. Additionally, the choice of law clause requiring application of Ohio law is of dubious relevance to this analysis, because this court has already ruled in a previous case against Convergys that this clause is not enforceable in Georgia. Keener, 342 F.2d at 1268.

In short, the range of considerations available to the district court in deciding whether to entertain the declaratory action is vast and the deference afforded to its decision is substantial. See Kerotest Mfg., 342 U.S. at 183-84, 72 S. Ct. at 221 ("The factors relevant to wise administration . . . are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts."). In its opinion, the district court even noted Manuel's federalism argument, which relied on a Georgia statute that provided a litigant with a right to have his case accelerated when a defendant

12

files a subsequent action in another state on the same controversy.[3]  Additionally,

there has been no showing that the district court was incapable of resolving the

---

[3]There is little doubt, and the parties do not argue otherwise, that the district court had to apply the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., rather than the state declaratory judgment act, in this action. See GTE Directories Publ'g Corp. v. Trimen Am., Inc., 67 F.3d 1563, 1567 (11th Cir. 1995) (noting that the Act "does not enlarge the jurisdiction of the federal courts but rather is operative only in respect to controversies which are such in the constitutional sense . . . .  Thus the operation of the [Act] is procedural only." (internal quotations omitted)). Unlike the Declaratory Judgment Act, which is a federal statute, the first-filed rule is federal common law.  See Merrill Lynch, Pierce, Fenner & Smith, 675 F.2d at 1174.  As we have noted previously, "[u]nder federal common law, an enforcing court should apply the law of the state courts in the state where the rendering federal court sits, unless the state's law conflicts with federal interests."  Palmer & Cay, Inc. v. Marsh & McLennan Cos., 404 F.3d 1297, 1310 (11th Cir. 2005) (citing Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 509, 121 S. Ct. 1021, 1028 (2000)).  In Palmer & Cay, we concluded that the goals announced by the Supreme Court in Semtek were applicable in determining the federal common law regarding the preclusive effect of state court judgments in cases involving noncompetition agreements.  Id.; see Semtek Int'l, 531 U.S.at 509, 121 S. Ct. at 1028.  Semtek's goals, echoing the federalism principle of Erie R.R. Co. v Tompkins, 304 U.S. 64, 78-80, 58 S. Ct. 817, 822-23 (1938), include discouraging forum shopping and encouraging a uniform administration of laws.  Semtek Int'l, 531 U.S. at 508-09, 121 S. Ct. at 1028.  Such goals are presumably not absent in applying the federal common law regarding the first-filed rule to properly filed state court declaratory judgment actions.

Under Georgia law, a litigant has a right to have his case adjudicated promptly when a defendant attempts to circumvent Georgia laws and public policy by filing a case in a foreign jurisdiction where the judgment could bar the Georgia claim.  See O.C.G.A. § 9-2-46(a) (stating in relevant part that "[w]henever it is made to appear to the judge of any court that any party to a case pending in the court, after the case has been commenced, has instituted proceedings in any court of any other state involving the same controversy . . .  it shall be the duty of the judge of the court in which the case is pending to set the case specially and ahead of all other business."); see also Enron Capital & Trade Res. Corp. v. Polasky, 490 S.E.2d 136, 138 (Ga. App. 1997) (noting that filing a declaratory judgment action to determine whether "employment could legally continue into the future . . . is not . . . improper").  Thus, it appears that the law in Georgia may even be less solicitous towards subsequently filed actions than the federal first-filed rule.  While we do not decide today whether the district court would be required to entertain the declaratory judgment action under an Erie-based analysis, the existence of such an expedited right in Georgia's courts, which the district court noted in its opinion, weighs heavily in favor of a conclusion that the district court did not abuse its discretion in declining to turn a properly filed state court action into an improperly filed federal court action.

13

parties' entire controversy. Thus, we find ample support in the record that the district court's decision to hear the declaratory judgment action was not an abuse of discretion.

B. NCA

Convergys alleges that Georgia has no significant contacts with the parties or events giving rise to the dispute and argues that the application of Georgia law to the NCA is therefore unconstitutional under Allstate Ins. Co. v. Hague, 449 U.S. 302, 308, 101 S. Ct. 633, 637-38 (1981). Keener is once again on point. "The application of Georgia law is not arbitrary or constitutionally impermissible because Convergys would be attempting to enforce the NCA against Keener, who is living and working in Georgia, where the effects would be felt." Keener, 342 F.3d at 1267-68. That is also true in this case. Despite Convergys's assertions to the contrary, the fact that Manuel conducted legal research before relocating to Georgia to live and work does not render the application of Georgia law to the NCA unconstitutional.

Applying Keener, the district court did not err in concluding that the NCA was contrary to Georgia public policy and that Georgia law therefore applied. See id. at 1267-68. Under Georgia law, the court correctly held that the NCA was unenforceable due to its overbreadth and indeterminate geographic reach. See id.

14

Convergys does not dispute that the NCA is unenforceable under Georgia law.

C. Convergys's Trade Secrets Counterclaim

On a motion to dismiss, the standard of review "is the same for the appellate court as it was for the trial court." Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1187 (11th Cir. 2004) (internal quotations omitted). Thus, "[w]e review de novo the district court's grant of a motion to dismiss under [Rule] 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the [nonmoving party]." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

Convergys pleaded its one-count trade secrets counterclaim under both Georgia and Ohio law. The claim alleges that Convergys entrusted Manuel with the following kinds of trade secret and confidential business information: (1) pricing; (2) price lists; (3) programs and processes sold, licensed, or developed by Convergys; (4) technical data, plans, and specifications relating to present and future development projects; (5) financial and marketing data; (6) computer programs, systems, and software; (7) processes; (8) improvements; (9) designs; and (10) redesigns. Convergys further alleges that Manuel will inevitably use this confidential information during his employment with Mellon. Under the liberal pleading standards of Federal Rule of Civil Procedure 8(a), Convergys contends

15

that it satisfied the requirement for a short and plain statement of the claim showing that the pleader is entitled to relief and it argues that the district court therefore erred in dismissing its counterclaim for failure to state a claim.

Convergys raises three issues regarding the trial court's dismissal of its counterclaim. First, it argues that district court erred in applying only Georgia law to its counterclaim because Manuel's misappropriation may occur outside of Georgia. Second, it argues that the district court misapplied the Georgia law on misappropriation of trade secrets. Third, it argues that the district court improperly resolved questions of fact regarding whether Manuel retained only personal knowledge of information that Convergys regards as protected. We address each of these issues in turn.

As to the first issue, a federal court sitting in diversity will apply the choice of law rules for the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941). Under Georgia conflicts of law rules, the choice of law provision in the contract will not apply to the tort claim of misappropriation of trade secrets. Rayle Tech, Inc. v. Dekalb Swine Breeders, Inc., 133 F.3d 1405, 1409 (11th Cir. 1998). For the trade secrets claim, the traditional Georgia rule of lex loci delicti will apply, which provides that "tort cases are governed by the substantive law of the state where the tort was committed." Lloyd

16

v. Prudential Sec., Inc., 438 S.E.2d 703, 704 (Ga. Ct. App. 1993); see also Salsbury Labs., Inc. v. Merieux Labs., Inc., 735 F. Supp. 1555, 1568 (M.D. Ga. 1989) ("In a trade secret misappropriation case, the lex loci delicti is not the place where the information was learned, but where the tortious act of misappropriation and use of the trade secret occurred."). We agree that the district court did not need to address Convergys's claim that other states' laws might apply because misappropriations may also occur there. The counterclaim is asserted under only Georgia and Ohio law, and Convergys offers no basis for the application of Ohio law. Thus, Georgia law governs Convergys's counterclaim.

As to the second issue, the district court, applying Avnet, Inc., v. Wyle Laboratories, Inc., 437 S.E.2d 302, 303, 305 (Ga. 1993), concluded that a list of general customer and business information, which was not protected as trade secret information under Georgia law, was virtually identical to the list of information in this case. In so doing, the district court held that Convergys failed to state a claim on which relief can be granted because an employee's knowledge, training, and experience gained during employment do not constitute trade secrets as a matter of law.

In Avnet, the Georgia Supreme Court affirmed a trial court's application of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 et seq. Id. The trial court in

17

that case determined that so long as the following customer and other business information was merely within the former employees' minds it did not constitute a protectable trade secret: "the identity of . . . suppliers, customers' identities, customer needs, business practices and patterns which include the type products clients purchase, the products sold but not delivered, specific client relations problems, client preferences, cost pricing, sales volume information, the amount clients are willing to pay, cost profit and price computation information as well as employee compensation capabilities and performances." Id. at 303. The plaintiffs appealed the portion of the trial court's order that allowed the former employees to use information "in their minds" that was gained through their former employment. Id. at 303, 304. In upholding the trial court's determination, the Georgia Supreme Court concluded that the holding in Taylor Freezer Sales Co. v. Sweden Freezer E. Corp., 160 S.E.2d 356 (Ga. 1968), "[has] not been obviated" by the Trade Secrets Act. Avnet, 437 S.E.2d at 305. The allegations in Taylor Freezer Sales Co. encompassed "practically every phase of the plaintiff's business, i.e., customers, equipment, prices, price quotations, new machines, method of doing business, and procedures." 160 S.E.2d at 360. Nevertheless, the court in that case found that "in none of these does there appear to be any element of secrecy or confidential information that is peculiar to the plaintiff's business and known only to it and its

18

employees." Id.

Several recent Georgia cases have applied the same rule. See e.g., DeGiorgio v. Megabyte Int'l, Inc., 468 S.E.2d 367, 369 (Ga. 1996) (citing Avnet and stating that "utilization of personal knowledge [of customer and vendor information] may be forbidden through the use of restrictive covenants, but not under the Trade Secrets Act" (emphasis added)); Stone v. Williams Gen. Corp., 597 S.E.2d 456, 459 (Ga. Ct. App. 2004) (citing Avnet and stating that "an individual is free to use any information he can remember from his former employment, including trade secrets, in the absence of a valid and enforceable covenant"), rev'd on other grounds, 614 S.E.2d 758 (Ga. 2005).

The Northern District of Georgia case of ServiceTrends, Inc. v. Siemens Medical Systems, 870 F. Supp. 1042 (N.D. Ga. 1994), is also instructive in this regard. In ServiceTrends a company alleged that its former employee misappropriated trade secrets in the form of technical data. Id. at 1074. The evidence showed that the employee allegedly disclosed "only the technical information residing in his mind." Id. In finding that the former employee did not misappropriate trade secrets, the court held that "the law does not prohibit the exploitation of an employee's accumulated knowledge" gained during his employment. Id.

19

Under Avnet, parties may contract above and beyond the protections of Georgia law with a valid nondisclosure agreement.  See Avnet, 437 S.E.2d at 305.  However, when that agreement, as here, has been found invalid, the base standards of Avnet apply, not the heightened standards of the invalidated agreement.  See id.  Therefore, we find no error in the district court's interpretation of applicable Georgia law.

As to the third issue, Convergys claims that the district court improperly accepted Manuel's representation that he retained only personal knowledge of Convergys's trade secrets.  Yet, even under the liberal pleading standards of Rule 8(a), Convergys's counterclaim has failed to state a claim upon which relief can be granted.  Convergys only alleges general customer and business information that Avnet held cannot be a trade secret if it is only personal knowledge.  The counterclaim refers generally to Manuel's training and experience and does not contain any statement alleging that Manuel physically took protected documents or other tangible, proprietary information when he left his employment with Convergys.[4]  As such, we conclude that the district court properly dismissed

---

[4] The following statements are relevant examples of the allegations in Convergys's counterclaim: "As a result of Manuel's commitment not to compete against Convergys and not to use or disclose its trade secrets and confidential business information, Convergys provided Manuel with extensive training, development, market exposure, experience, and access to its trade secrets and confidential information.  As a result of his employment at Convergys, Manuel obtained detailed and highly confidential information and knowledge of, among other things, (a) the quality and scope of services provided by Convergys; (b) the speed and flexibility of

20

Convergys's counterclaim under Georgia law.

### III. CONCLUSION

Convergys argues that the district court erred in entertaining Manuel's declaratory judgment action, voiding the NCA, and dismissing its counterclaim. We conclude that the district court did not abuse its discretion in entertaining the declaratory judgment action. We also conclude that the district court properly determined that, under Georgia law, the NCA was void and unenforceable and that Convergys's counterclaim failed to state a claim. Accordingly, the judgment of the district court is **AFFIRMED**.

---

implementation of Convergys' products and services; (c) the technological strength and weaknesses of Convergys' products and services; and (d) the pricing of Convergys' products and services." R1-4 at 20 § 33. "In particular, Manuel obtained extensive training and experience in selling HR Outsourcing services to large companies." Id. at 21 § 34. "Manuel's knowledge and use of Convergys' trade secrets would result in competitive advantages to Manuel and/or Mellon. These advantages would include knowledge of Convergys' customers, business and marketing plans or strategies, pricing methods and strategies, and development of new products and services, among other things." Id. at 25 § 46.