[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10673
_____

D.C. Docket No. 1:11-cv-03432-TWT

COLLEGIATE LICENSING COMPANY,

Plaintiff - Appellee,

versus

AMERICAN CASUALTY CO. OF READING,
PENNSYLVANIA, GREAT DIVIDE INSURANCE
COMPANY, ALLIED WORLD NATIONAL ASSURANCE
COMPANY, CONTINENTAL CASUALTY COMPANY,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(March 21, 2013)

Before MARCUS and MARTIN, Circuit Judges, and SCRIVEN,[*] District Judge.

SCRIVEN, District Judge:

This appeal arises from the grant of an injunction by the United States District Court for the Northern District of Georgia that enjoined Appellants, pursuant to the first-filed rule, from proceeding with intervention complaints filed in a pending lawsuit in California.   For the reasons set forth below, we affirm the Georgia district court's decision.

## I.    BACKGROUND

Appellee, Collegiate Licensing Company ("CLC") is a licensing agent for more than 200 colleges and universities, and the National Collegiate Athletic Association ("NCAA").  CLC licenses trademarks and trade dress to its licensees, including Electronic Arts, Inc. ("EA"), a publicly-traded company that sells NCAA football and basketball related video games that utilize licensed trademarks, logos, and college colors.  Beginning in May 2009, CLC was named as a defendant in multiple class action lawsuits (the "Underlying Actions"), which allege that CLC, together with EA and the NCAA, wrongfully profited from the unauthorized and uncompensated use of college athletes' names and likenesses in a variety of mediums, including videogames and televised and print advertisements.  Most of

---

[*] Honorable Mary S. Scriven, United States District Judge for the Middle District of Florida, sitting by designation.

the Underlying Actions have been filed in California. The plaintiffs in the Underlying Actions reside throughout the country.

CLC is a named insured under numerous insurance policies pursuant to which it seeks coverage for the Underlying Actions. Beginning in 2007, National Union Fire Insurance Company ("National Union") issued several commercial general liability and umbrella policies to California-based EA. CLC is listed as an additional insured under the National Union policies. CLC is also a named insured under commercial general liability policies issued by American Casualty Co. of Reading, Pennsylvania ("American Casualty"), Great Divide Insurance Company ("Great Divide"), and Allied World National Assurance Company ("Allied World"). Finally, CLC is insured under several umbrella policies issued by various carriers: Continental Casualty Company ("Continental"), Westchester Fire Insurance Company ("Westchester"), and Lexington Insurance Company ("Lexington")[1]. All of the policies provide defense and indemnity coverage or excess coverage arising from lawsuits alleging "personal and advertising injury." However, the policies also provide that "th[e] insurance [policies] d[o] not apply to personal or advertising injury arising out of the infringement of copyright, patent,

---

[1] For purposes of this Appeal, American Casualty, Great Divide, Allied World, and Continental, are hereinafter collectively referred to as "Appellants." Westchester and Lexington are not parties to this Appeal as they never sought to intervene in the California Action. Further, on December 21, 2011, Lexington was dismissed from the Georgia Action without prejudice.

trademark, trade secret, or other intellectual property rights." It is the latter form language that lies at the center of the coverage actions that give rise to this appeal.

Although the National Union policies and the Appellants' policies contain this identical form language, there is no relationship between National Union and the Appellants. Additionally, the Appellants' policies are in no way related to the National Union policies, although certain of the Appellants' policies purport to provide coverage only in excess of other coverage benefits to which CLC might be entitled. Further, the policies are not identical in every way. The Appellants' policies contain different endorsements than are present in the National Union policies. The National Union policies have different policy limits and different premiums than the Appellants' policies. None of the insurance policies at issue has a choice of law provision or a forum selection clause.

CLC sought coverage from American Casualty, Great Divide, and Allied World for the lawsuits filed against it in the Underlying Actions. CLC also sought coverage, as an additional insured, from National Union under the policies issued to EA in California. Coverage issues arose among the parties. CLC contends that American Casualty initially agreed to defend CLC in the Underlying Actions pursuant to a reservation of rights. However, according to CLC, American Casualty imposed significant restrictions that are unreasonable and contrary to Georgia law. CLC objected to the restrictions.

4

CLC also contends that National Union initially agreed to defend CLC in the Underlying Actions subject to a reservation of rights and certain limitations to which CLC has objected.  On October 3, 2011, National Union sued EA and CLC in the Northern District Court of California ("California Action") to ascertain whether it is obligated to provide insurance coverage under the policies it issued in California to EA with CLC as an additional insured.  The Insurance Company of the State of Pennsylvania ("ISOP"), an affiliated company of National Union that insured EA under separate policies not issued to CLC, is also a plaintiff in the California Action, asserting claims only against EA.  In the California Action, National Union seeks a determination regarding its duty to defend or indemnify CLC and EA in the Underlying Actions.

On October 10, 2011, CLC filed suit in the Northern District of Georgia ("Georgia Action") against the Appellants seeking a declaration that the Appellants are obligated to defend and indemnify CLC in connection with the Underlying Actions.  CLC also sued the Appellants for breach of contract.

On October 27, 2011, November 16, 2011, and November 23, 2011, the Appellants filed separate motions to intervene in the California Action.  The Appellants also sought leave to file intervention complaints.  They argued they should be permitted to intervene in the California Action as a matter of right pursuant to Federal Rule of Civil Procedure 24(a) or, in the alternative,

5

permissively, pursuant to Federal Rule of Civil Procedure 24(b).  On November 8, 2011, and November 28, 2011, CLC moved the Georgia district court to enjoin the Appellants' pursuit of intervention in the California Action, arguing the Georgia Action was the "first-filed" suit against the Appellants.  On November 14, 2011 November 18, 2011, and November 30, 2011, the Appellants filed in the Georgia district court their separate motions to transfer the Georgia Action to California.

On December 14, 2011, before the Georgia district court ruled on CLC's motion to enjoin the Appellants from intervening in the California Action or the Appellants' motions to transfer, the California district court granted the Appellants' motions to intervene in the California Action and granted the Appellants leave to file their intervention complaints on or before December 21, 2011.  The California district court found permissive intervention was appropriate.

The California district court undertook the classic permissive intervention analysis.  Citing the relevant Rules of Civil Procedure, it found the Appellants' actions shared common questions of law or fact with National Union's lawsuit because the Appellants proposed to seek the same declaratory relief as National Union and because the insurance policies at issue in the Georgia Action involved certain provisions and exclusions that are identical to those of the National Union policies.  The California district court also found that the Appellants would have had complete diversity with CLC if they had filed complaints independent of the

6

California Action.  Finally, the California district court found the motions to intervene were timely because the lawsuit was still in its beginning stages and intervention would not cause any prejudice to the existing parties.  Although the first-filed issue was argued before the California district court, the California district court's order was silent on that issue.

On December 19, 2011, after the Appellants filed their intervention complaints in the California Action, CLC filed an emergency motion with the Georgia district court asking it to issue an injunction precluding the Appellants from proceeding with their intervention complaints in the California Action.  After holding a hearing on the motion, the Georgia district court granted CLC's motion and ordered the Appellants to dismiss their intervention complaints without prejudice.  The Georgia district court found it was the first-filed court for purposes of deciding the CLC declaratory action in Georgia and the Appellants' intervention complaints in California.

Conducting its analysis of the applicability of the first-filed rule, the Georgia district court rejected the Appellants' notion that the relevant cases for comparison purposes were CLC's complaint filed in Georgia versus National Union's complaint in California.  It found that the National Union Action  and the CLC Action in Georgia were distinct actions because the policies issued by National Union and ISOP to EA and CLC, which are at issue in the California Action, are

7

"different policies, [involving] different insureds, different brokers, and different adjusters, and they were placed in different states."[2] See (R. Vol. 27, Tab. 101, p. 4.)  The Georgia district court concluded instead that, for purposes of the first-filed analysis, the Georgia Action and the Appellants' intervention complaints were the proper comparators.  It reasoned that those two actions contained the same parties, the same policies, and the same issues to be litigated.

Before exercising any authority over the Appellants *vis-a-vis* their intervention complaints, the Georgia district court expressly found that the California district court's order granting intervention did not contain any explicit finding on the first-filed issue, even though the issue was raised before the California district court.  It further found that the anticipatory suit exception to the first-filed rule did not apply to CLC's complaint in this case, concluding that CLC's lawsuit was "a legitimate and reasonable attempt by CLC to have its rights adjudicated in a forum having jurisdiction over the dispute, and in a forum of its choice."  See id., p. 7.  Finally, the Georgia district court found that the transfer of venue factors considered in an analysis under 28 U.S.C. § 1404 did not justify an exception to the first-filed rule.

---

[2] The Georgia district court found that Allied World, Great Divide, and Westchester delivered their insurance policies to CLC's parent Company, IMG, in Ohio.  American Casualty and Continental delivered their policies directly to CLC in Georgia. The insurance brokers for the policies issued by the Appellants were based in Georgia.

## II.    STANDARD OF REVIEW

This Court reviews a district court's decision to grant an injunction under an abuse of discretion standard. <u>Klay v. United Healthgroup, Inc.</u>, 376 F.3d 1092, 1096 (11th Cir. 2004). A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. <u>Id</u>. (quotations and citation omitted). A district court may also abuse its discretion by applying the law in an unreasonable or incorrect manner. <u>Id</u>. (citations omitted). The abuse of discretion standard allows a range of choices for the district court, so long as any choice made by the court does not constitute a clear error of judgment. <u>Manuel v. Convergys Corp.</u>, 430 F.3d 1132, 1135 (11th Cir. 2005) (citation omitted).

## III.    DISCUSSION

The principal issues before this Court are (1) whether the Georgia district court erred in its application of the first-filed rule; and (2) whether the court abused its discretion in ordering the Appellants, pursuant to the first-filed rule, to dismiss their intervention complaints filed in the California Action after the California district court had already allowed the Appellants to intervene in the lawsuit. We hold that the Georgia district court's application of the first-filed rule in this case was not erroneous and that the court did not abuse its discretion in issuing an injunction ordering Appellants to dismiss their intervention complaints.

Appellants' principal contention on appeal is that the Georgia district court erred in its application of the first-filed rule in this case. Appellants contend that the first-filed rule does not apply to complaints in intervention, and, even if the first-filed rule applies, the California district court, not the Georgia district court, is the first-filed court.  Appellants also contend even if the Georgia district court were the first-filed court, the anticipatory suit exception and the 28 U.S.C. §1404(a) factors apply in this case and warrant dismissal or transfer of the Georgia Action to the California district court.  Finally, Appellants contend that even if the Georgia district court properly applied the first-filed rule, the Georgia district court abused its discretion by rejecting and overruling the California district court, a sister court of equal dignity.

## A. The Georgia District Court Did Not Err in its Application of the First-Filed Rule.

The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case.  Merrill Lynch, Pierce, Fenner & Smith, Inc., v.  Haydu, 675 F.2d 1169, 1174 (11th Cir. 1982).  Thus, we have held that "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."  Manuel, 430 F.3d at 1135 (citations omitted).  The first-filed rule not only determines which court may decide the merits of

10

substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated. See Mann Mfg., Inc. v. Hortex, Inc., 439 F.2d 403, 408 (5th Cir. 1971); Sutter Corp. v. P & P Industries, Inc., 125 F.3d 914, 920 (5th Cir. 1997) (citing Mann Mfg., 439 F.2d at 408).

In this case, the Georgia district court did not err in finding it was the court "initially seized" of the action instituted by CLC's complaint against the Appellants. National Union's action in California was obviously already filed at the time the intervention was sought. The complaints that CLC asserted offended the first-filed rule, however, were the complaints Appellants sought permission to file in intervention before the California district court. In this regard, it is important to note that Appellants did not simply seek to intervene as parties to assert an interest in the existing case already pending in the California district court. This is so because that existing action did not involve their policies, and any determination in that action likely would not have afforded them relief other than perhaps to serve as persuasive authority in any action that did implicate their policies. Recognizing this, Appellants presented their own proposed complaints—what we refer to here as the intervention complaints. The intervention complaints filed in the California Action involve the exact same parties, the exact same insurance policies, and the exact same legal issues as the complaint filed by CLC

11

in the Georgia Action. The intervention complaints were also indisputably filed after the Georgia Action was instituted. Thus, contrary to Appellants' assertion, and as the Georgia district court found, the proper comparative complaints for purposes of the first-filed analysis in this case are CLC's Georgia complaint and Appellants' proposed intervention complaints.

Appellants' reliance on an issue-based analysis to support a contrary conclusion is flawed for several reasons. The fact that the form coverage language is identical among the policies does not establish that the California district court, where interpretation of the language was first urged, is the court first seized of the "action." A first-filed analysis looks to the character of the suits and the parties to the suits, not simply to the similarity of issues without regard to the identity of the parties asserting them and their asserted rights as presented in the initial lawsuit. Here, there is no relationship between National Union and the Appellants. Appellants do not bring claims against National Union in their intervention complaints in the California Action. Appellants' intervention complaints name themselves as Plaintiffs and only CLC as a defendant. National Union is not suing Appellants in the California Action, and Appellants are not suing EA, which is a defendant in the California Action. Thus, the only party in common in the Georgia Action and the California Action is CLC. Further, the policies at issue in National Union's complaint are different policies than those at issue in the Georgia

12

Action.  The two lawsuits involve different insurance companies, with policies issued by brokers in different states.  Although this Court does not take issue with the California district court's conclusion that the Appellants' proposed claims shared certain common questions of law or fact with National Union's action, that finding is not dispositive of whether the actions in which those disputes are raised are the same for purposes of the first-filed rule.

Appellants' contention that the first-filed rule does not apply to complaints in intervention is also unpersuasive.  Appellants cite no authority to support this contention.  The Court can discern no reasoned basis for enjoining Appellants under the first-filed rule from filing a new complaint in a subsequent jurisdiction, which seeks to litigate issues between the same parties in a suit already pending in another jurisdiction, but refusing to enjoin them from filing the identical complaint in intervention.  A contrary rule would allow an end-run around the first-filed rule any time permissive intervention might be allowed in a different court.  Certainly, it cannot be said that the Georgia district court committed legal error or abused its discretion when it declined to permit such a maneuver in the case before it.

Finally, the Georgia district court properly found that the anticipatory suit exception to the first-filed rule does not apply and that the 28 U.S.C. § 1404 factors do not justify an exception to the first-filed rule.  The anticipatory suit exception to the first-filed rule applies when one party, on notice of a potential lawsuit, files a

13

declaratory judgment action in its home forum.  See Manuel, 430 F.3d at 1135.  In that circumstance, the "first-filed" court can decline to invoke the first-filed rule to retain the strategically filed action.  However, even if a court finds that a filing is anticipatory, such finding does not automatically compel abandoning the first-filed rule.  Rather, the matter remains one of discretion for the trial court.   Id.

In this case, National Union sued CLC in California claiming it had no duty to defend CLC as an additional insured under the EA policies.  CLC then determined that it too needed a determination of coverage from its own unrelated carriers. The Georgia district court cannot be said to have committed clear error in finding that CLC was justified in suing its primary insurers in Georgia, where it had been headquartered for many years, to protect its asserted interest under those policies.

Likewise, the Georgia district court did not abuse its discretion in concluding that forum conveniens and forum affinity factors did not warrant suspension of the first-filed rule. While this Court has recognized the convenience of the parties and the second-filed forum's connection with the controversy as relevant in deciding whether an exception to the first-filed rule exists, those factors are non-exclusive and do not mandate transfer of this action to the California district court.  As the Georgia district court found, there is no evidence that any of the witnesses relevant to the inception and interpretation of the Appellants' policies

14

are located in California.  Further, many of the relevant documents at issue are located in Georgia because CLC is a Georgia corporation and the policies were either issued in Georgia or Ohio by Georgia-based brokers. While certain documents may be on file in the Underlying Actions in state courts in California, those files can just as easily be accessed in Georgia federal court as in California federal court.  Finally, none of the Appellants are California citizens.

Accordingly, we find that the Georgia district court did not commit legal error in the application of the first-filed rule in this case.

## B. The Georgia District Court Did Not Abuse its Discretion in Enjoining the Appellants from Proceeding with their Intervention Complaints in the California Action.

Appellants contend that the Georgia district court's order improperly infringed on the authority of a sister court of equal dignity.  More specifically, Appellants argue that the California district court impliedly ruled on the first-filed issue when it found that the motions for intervention were timely filed.  Thus, Appellants contend, the Georgia district court's decision to enjoin them from proceeding to intervene effectively overruled the California district court—or worse, was a *de facto* attempt by the Georgia district court to exercise authority under the All Writs Act[3] to enjoin a sister court.

---

[3] The Appellants must and do concede that the Georgia district court did not expressly invoke or otherwise reference the All Writs Act, nor did the Appellees in seeking relief from the Georgia district court.

15

The first-filed rule is a rule of equity, see Manuel, 430 F.3d at 1135, and a court in issuing an injunction invokes its equitable authority. See Salazar v. Buono, 559 U.S. 700, 130 S.Ct. 1803, 1816 (2010) (plurality opinion) ("An injunction is an exercise of a court's equitable authority.")  The parties agree therefore that the Georgia district court's decision to enjoin Appellants from proceeding with their intervention complaints pursuant to the first-filed rule will not be disturbed absent a showing of abuse of discretion.  See Manuel, 430 F.3d at 1135.  Under that standard, the Georgia district court's decision will not be disturbed unless it constitutes a clear error of judgment. Id.  We have, of course, already concluded that the decision was not legally erroneous.  See discussion supra at pp. 10-15.  To find an abuse of discretion notwithstanding, as urged by Appellants, this Court would have to infer that the California district court reached an issue that is nowhere present on the face of its Order.  We decline to do so in this case.[4]  We would additionally have to infer that the Georgia district court so concluded and yet sought to interfere with the jurisdiction of a sister court, which the Georgia district court is presumed to know is prohibited by black letter law. The record simply does not bear out such an abuse of discretion.

---

[4] See Dunlop v. Ledet's Foodliner of  Larose, Inc., 509 F.2d 1387, 1389 (5th Cir. 1975) (rejecting appellant's argument that district court intended to dispose of both claims, even where district court's judgment was silent as to one of the claims, noting this Court "will not search a record to clarify an unambiguous judgment"). In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to September 30, 1981.

To the contrary, it appears from a review of the record that both the California district court and the Georgia district court were acutely aware of their parameters and deftly avoided infringing on the authority of the other. This is evidenced by the California district court's decision to resolve the Appellants' motions to intervene solely, and unambiguously, on an articulation of permissive intervention standards without any reference to the first-filed issue, even though the first-filed rule was raised before the California district court. This is also evidenced by the Georgia district court's statement on the record that it "would be inclined to give the question of comity and judicial deference a great deal more weight if there had been an explicit finding by the judge in the California district court that it was the first-filed jurisdiction." See (R. Vol. 27, Tab. 94, p. 29.) Moreover, the Georgia district court's order was expressly directed to the Appellants. The injunction order was not directed to the California district court. It enjoined the Appellants from pursuing their claims in contravention of the Georgia district court's jurisdiction over this case of which it was initially seized before the intervention was sought or granted.

Thus, this Court finds the Georgia district court did not impermissibly exercise any *de facto* authority under the All Writs Act, and it did not otherwise abuse its discretion by enjoining Appellants, pursuant to the first-filed rule, from

17

proceeding with their intervention complaints.  For these reasons, the decision of

the Georgia district court is AFFIRMED.