[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-11961

Non-Argument Calendar

_____

KENNETH JOHNSON,
JACQUELYN JOHNSON,

                                        Plaintiffs-Appellants,

*versus*

GEORGIA BUREAU OF INVESTIGATION,
LOWNDES COUNTY SHERIFF'S OFFICE,
VALDOSTA-LOWNDES REGIONAL CRIME LABORATORY,
LOWNDES COUNTY BOARD OF EDUCATION,
JOHN DOE, et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-04218-LMM

_____

Before ROSENBAUM, JILL PRYOR, and BRASHER, Circuit Judges.

PER CURIAM:

Jacquelyn and Kenneth Johnson appeal the dismissal of their amended complaint, alleging a conspiracy to violate their civil rights and other violations under 42 U.S.C. §§ 1983 and 1985, for failure to state a claim on which relief can be granted, and the denial of their motion for leave to amend their pleading. They also appeal the denial of their motion for recusal of the district judge. After careful review, and for the reasons that follow, we affirm in part and vacate and remand in part.

**I.**

This case arises from the tragic death of Kendrick Johnson, a sophomore at Lowndes High School in Valdosta, Georgia. Our summary of the relevant facts comes from the Johnsons' amended complaint and is not intended to be comprehensive.

In January 2013, Kendrick's body was found inside an upright rolled-up gym mat in the high-school gym. Law enforcement ruled the death a tragic accident. Early in its investigation, according to the amended complaint, the Lowndes County Sheriff's

Office told the media that the death was accidental.  The Valdosta-Lowndes Regional Crime Laboratory reported no signs of blunt force trauma or visible wounds.  And an autopsy report prepared by the Georgia Bureau of Investigation ("GBI") concluded that Kendrick had died by "accidental positional asphyxiation."

In the Johnsons' view, however, the official narrative of their son's death does not withstand scrutiny.  They cite evidence of bruising to Kendrick's right jaw, abrasions on his hands, and markings they say are consistent with stun-gun prongs near his waist.  And they note that an independent autopsy they commissioned found that the cause of death was "non-accidental blunt force trauma" in the right neck area.  Plus, an expert hired by CNN to review surveillance footage from the high school found that it had been altered and that some video was missing.

Several years later, in 2021, following a federal investigation that ended without charges, the Sheriff's Office reopened its investigation into Kendrick's death amid community outcry.  It then issued a report again concluding that Kendrick had died by accident, after he reached into the opening of the gym mat for a pair of shoes, fell, became stuck, and suffocated.

**II.**

The Johnsons brought this civil-rights action *pro se* under §§ 1983 and 1985, alleging that the defendants conspired to present a false narrative about their son's cause of death, and that the Sheriff's Office violated their rights by denying access to public records. In the operative first amended complaint, the Johnsons named as

defendants the Sheriff's Office, the Crime Lab, and the GBI, as well as the Lowndes County Board of Education ("School Board") and an unnamed agent with the Federal Bureau of Investigation.

The defendants moved to dismiss the amended complaint on various grounds, and the district court stayed discovery pending a ruling on the motions. In response, the Johnsons tried to file a second amended complaint, which the court struck as procedurally improper. They later requested leave to file a third amended complaint, which added new defendants and new claims.

While these motions were pending, the Johnsons submitted an affidavit alleging bias or prejudice by presiding U.S. District Court Judge Leigh Martin May and seeking her recusal under 28 U.S.C. §§ 144 and 455. Judge May denied the motion, finding no grounds for recusal.

The district court then denied the motion to amend and granted the defendants' motions to dismiss. The court dismissed the amended complaint after finding that GBI was shielded by Eleventh Amendment and sovereign immunity; that the Sheriff's Office, the Crime Lab, and the School Board were not legal entities capable of being sued; and that the John Doe FBI agent was not adequately identified. The court reasoned that those same defects made amendment futile with respect to the existing defendants. As for the proposed new claims against new defendants, the court found that some defendants were entitled to immunity, while the claims against the remaining new defendants were supported only by conclusory allegations of conspiracy. This appeal followed.

### III.

Liberally construing the Johnsons' *pro se* briefing, they make three arguments.  *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (stating that we will liberally construe the filings of *pro se* parties).  First, they contend that Judge May demonstrated bias or prejudice and should have recused.  Second, they maintain that the Sheriff's Office, the Crime Lab, and the School Board are entities capable of being sued.  And third, they contend that they stated or could state a claim, asserting that Kendrick's death was not accidental and that the defendants violated numerous state and federal laws.

We review a refusal to recuse for an abuse of discretion. *Loranger v. Stierheim*, 10 F.3d 776, 779 (11th Cir. 1994).  A court abuses its discretion if it makes an error of law, follows improper procedures, relies on clearly erroneous facts, or commits a clear error of judgment. *Collegiate Licensing Co. v. Am. Cas. Co.*, 713 F.3d 71, 77 (11th Cir. 2013).

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005). "Dismissal under Rule 12(b)(6) is proper when the facts alleged in the complaint fail to state a claim to relief that is plausible on its face." *Taylor v. Polhill*, 964 F.3d 975, 981 (11th Cir. 2020) (quotation marks omitted).

We generally review the denial of leave to amend for an abuse of discretion, but we review *de novo* whether "a particular

amendment to the complaint would be futile." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Amendment is futile when "the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Id.*

## A.

A district judge is required to recuse herself "in any proceeding in which h[er] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Similarly, a party may seek recusal of a district judge by filing an affidavit asserting that the judge is biased or prejudiced and stating the grounds for believing to be biased. *Id.* § 144. "To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists." *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000). In either case, the bias must stem from extrajudicial sources and must be focused against a party to the proceeding. *Hamm v. Members of Bd. of Regents of State of Fla.*, 708 F.2d 647, 651 (11th Cir. 1983); *see also Liteky v. United States*, 510 U.S. 540, 548–56 (1994). Thus, a party generally cannot show grounds for recusal with "nothing more than complaints about the judge's timeliness and rulings." *Loranger*, 10 F.3d at 780–81.

Here, the Johnsons have not shown that the district judge abused her discretion by refusing to recuse herself. For starters, the filing of the affidavit of bias or prejudice under § 144 did not prevent the court from ruling on the recusal request or acting further in the case. Rather, the judge was required to "strictly scrutinize[]" the affidavit for "form, timeliness, and sufficiency," and "to pass upon

the legal sufficiency of the affidavit." *United States v. Womack*, 454 F.2d 1337, 1341 (5th Cir. 1972) (emphasis added)[1]; *see United States v. Perkins*, 787 F.3d 1329, 1343 (11th Cir. 2015).

Neither the Johnsons' affidavit nor their briefing identifies any extrajudicial source of bias sufficient to warrant recusal. Rather, the Johnsons complain about the judge's docket administration, timeliness, and adverse rulings. But those matters do not establish the type of bias or prejudice that would require the judge's recusal under either § 144 or § 455. *See Loranger*, 10 F.3d at 780–81; *see In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1274 (11th Cir. 2009) ("Challenges to adverse rulings are generally grounds for appeal, not recusal"); *Liteky*, 973 F.2d at 910 ("[M]atters arising out of the course of judicial proceedings are not a proper basis for recusal."). Because the Johnsons have not identified any grounds on which the judge's impartiality could reasonably be questioned, the district judge did not abuse her discretion by declining to recuse.

## B.

For parties that are not individuals or corporations, the capacity to sue or be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3).

Under Georgia law, "while a county is subject to suit, police departments, as mere arms of such governments, are not generally considered legal entities capable of being sued." *Myers v. Clayton*

---

[1] We adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

8                    Opinion of the Court                    24-11961

*Cnty. Dist. Att'y's Off.*, 849 S.E.2d 252, 256 (Ga. Ct. App. 2020).  One Georgia appellate court has also said that sheriff's offices "are not separate legal entities capable of being sued."  *Brantley v. Jones*, 871 S.E.2d 87, 90 n.1 (Ga. Ct. App. 2022).[2]  Similarly, in Georgia, "a county board of education, unlike the school district which it manages, is not a body corporate and does not have the capacity to sue or be sued" unless so authorized by legislative act.  *Cook v. Colquitt Cnty. Bd. of Educ.*, 412 S.E.2d 828, 841 (Ga. 1992).

Based on this authority, the district court did not err in concluding that the Sheriff's Office, Crime Lab, and School Board were not entities capable of being sued.  According to *Brantley*, a Georgia sheriff's office is not a "separate legal entit[y] capable of being sued." *Brantley*, 871 S.E.2d at 90 n.1.  The Johnsons do not dispute that the Crime Lab is part of the Valdosta Police Department, which is considered merely an arm of the municipality and not a separate legal entity subject to suit.  *Myers*, 849 S.E.2d at 256; *see McClain v. City of Carrollton Police Dep't*, 863 S.E.2d 172, 173 (Ga. Ct. App. 2021).  And they fail to identify any legislative authorization for the School Board to sue or be sued, so under Georgia law, it is "not a body corporate and does not have the capacity to sue or be sued."  *Cook*, 412 S.E.2d at 841.

---

[2] In contrast to police departments, sheriff's offices in Georgia are "separate constitutional office[s] independent from" municipal government, *Manders v. Lee*, 338 F.3d 1304, 1310 (11th Cir. 2003) (*en banc*), so they cannot be considered as "mere arms of such governments," *Myers v. Clayton Cnty. Dist. Att'y's Off.*, 849 S.E.2d 252, 256 (Ga. Ct. App. 2020).

Nonetheless, we cannot say that amendment would be futile for the reason given by the district court. *See Cockrell*, 510 F.3d at 1310. Even if the Sheriff's Office itself is not subject to suit, Georgia law recognizes liability against sheriffs in their official capacities. *See Gilbert v. Richardson*, 452 S.E.2d 476, 484 (Ga. 1994) ("Since deputy sheriffs are employed by the sheriff rather than the county, sheriffs may be liable in their official capacity for a deputy's negligence in performing an official function."); *Brown v. Jackson*, 470 S.E.2d 786, 787 (Ga. Ct. App. 1996) (describing the sheriff, not the county, as the "proper party" in a wrongful death suit based on the actions of deputy sheriffs). Because "[o]fficial capacity claims are tantamount to a suit against the governmental entity involved, here the Sheriff's Office," *Jones v. Cannon*, 174 F.3d 1271, 1293 (11th Cir. 1999), it follows that the sheriff in his official capacity could be substituted for the Sheriff's Office as the proper defendant, without any meaningful change to the underlying claims or parties.

Similarly, although a school board does not have the capacity to sue or be sued, Georgia law recognizes that a school district managed by the board is "a corporate body subject to suit." *Foskey v. Vidalia City Sch.*, 574 S.E.2d 367, 370 (Ga. Ct. App. 2002). And while a police department, as merely an arm of the municipality, cannot be sued, the municipality itself is a legal entity capable of being sued.[3] *See Myers*, 849 S.E.2d at 256.

---

[3] We also note that the Johnsons' more recent allegations focus on the actions of two individuals: (1) Lowndes County Sheriff Ashley Paulk, who was responsible for reopening and overseeing the Sheriff's Office's investigation into

So while some entities named by the Johnsons may not have been capable of being sued, we cannot say that this defect renders amendment futile.  The record suggests that the Johnsons could identify defendants capable of being sued in relation to their claims, even if there may be other grounds for dismissal, as reflected in the defendants' motions to dismiss.  Because the defendants have not briefed these other grounds in any detail, we decline to address them for the first time on appeal.  *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 n.4 (11th Cir. 2001) ("We do not reach these issues today, preferring that the district court address them in the first instance.").  We therefore vacate the dismissal of the first amended complaint and remand for further proceedings consistent with this opinion.

## IV.

In sum, we affirm the district court's refusal to recuse.  We vacate the dismissal of the Johnsons' amended complaint, and we remand for further proceedings consistent with this opinion.

**AFFIRMED in part; VACATED and REMANDED in part.**

---

Kendrick's death in 2021 and 2022; and (2) "Dr. Kraft," the GBI medical examiner who performed the initial autopsy and provided testimony in 2019.