Robert **WEINTRAUB**, as a Natural Parent and Surviving Heir of William Weintraub, deceased, and as Administrator of the Estate of William Weintraub, Plaintiff

v.

**ADVANCED CORRECTIONAL HEALTHCARE, INC.**, an Illinois corporation, and Prisoner Transport Services of America, LLC, a Tennessee limited liability corporation, Defendants.

CIVIL ACTION NO. 1:15-CV-01213-AT

United States District Court,
N.D. Georgia, Atlanta Division.

Signed October 26, 2015.

van in Georgia from an alleged untreated ulcer and septic infection. Plaintiff, Weintraub's surviving heir and the administrator of his estate, filed suit against Defendants Advanced Correctional Healthcare, Inc. ("ACH") and Prisoner Transport Services of America, LLC ("PTS"), asserting claims for negligence, medical negligence, and damages under Georgia's wrongful death statute.

Defendant PTS, a Tennessee corporation that provides contract transportation services to correctional facilities nationwide, seeks to transfer this case to the Western District of Kentucky in order to assert claims against the county detention center where Mr. Weintraub was temporarily housed during his twelve-day transport by PTS from Colorado to South Carolina. Because none of the factors used by the Eleventh Circuit under 28 U.S.C. § 1404(a) favor transfer of venue to Kentucky, Defendant PTS's Motion to Transfer Venue [Doc. 20] is **DENIED**.

Cale Howard Conley, Ranse M. Partin, Alyssa Bernadette Baskam, Conley Griggs Partin, LLP, Curry Gary Pajcic, Robert Link, Pajcic & Pajcic, Attorneys for Plaintiff.

Brynda Rodriguez Insley, Kevin Alan Spainhour, Insley & Race, Jacob Edward Daly, Sun S. Choy, Freeman Mathis & Gary, LLP, Attorneys for Defendant.

## ORDER

Amy Totenberg, United States District Judge

This case arises out of the death of Dr. William Weintraub in a prison transport

## I. BACKGROUND

### A. FACTUAL ALLEGATIONS

Dr. William Weintraub, a nuclear physicist who previously worked in academia at various universities throughout the country, moved to Boulder Colorado to start his own business in 2013. (Am. Compl. ¶¶ 9-10.) On January 1, 2014, Weintraub was involved in a dispute with his roommate, the police were called, and Weintraub was detained by the Boulder Police on an outstanding arrest warrant from South Carolina. (*Id.* ¶ 11.) After securing Weintraub's extradition on March 14, 2014, the State of South Carolina hired Defendant PTS to transport Weintraub from Colorado to South Carolina to face the pending charges. (*Id.* ¶¶ 12-13; Def.'s Mtn.

Transfer Venue, Ex. 3 at 1.) While waiting in the Boulder County Jail for PTS to pick him up, Weintraub began experiencing stomach pains and was treated with Maalox, milk of magnesia, and Miralax. (Am. Compl. ¶ 14.)

PTS took custody of Weintraub on April 14, 2014, and began a five-day trip from Colorado to Utah and then to the Daviess County Detention Center (the "DCDC") in Owensboro, Kentucky. (*Id.* ¶16.) Plaintiff alleges that PTS discontinued treatment for Weintraub's stomach condition during the five-day trip to Kentucky. (*Id.* ¶ 16.) As a result, the Amended Complaint alleges that "Dr. Weintraub's stomach pains increased and a duodenal ulcer developed and/or worsened." (*Id.*)

PTS had a contract with the DCDC to "temporarily house prisoners in [PTS's] care" at the DCDC facility in Owensboro, Kentucky.[1] (Def.'s Mtn. Transfer Venue, Ex. 10 at 1.) On April 18, PTS admitted Weintraub to the DCDC, which PTS used as a hub for its detainees en-route to South Carolina, where he was held until April 24, 2014 while PTS accumulated enough detainees to transport to Georgia and South Carolina. (*Id.* ¶¶ 17-18.) Plaintiff alleges that during Weintraub's week-long stay at the DCDC, his condition took a turn for the worse. (*Id.* ¶ 22.)

Defendant ACH, an Illinois corporation, provided contract healthcare services for PTS detainees at the DCDC. (*Id.* ¶¶ 5, 19.) Plaintiff alleges that ACH did not perform a legally mandated initial medical screening upon Weintraub's admission to the DCDC. (*Id.* ¶ 21.) On April 21, Weintraub formally requested medical care for intense stomach pain by filing a Sick Call Request Form with ACH medical staff.

(Am. Compl. ¶ 24; Def.'s Mtn. Transfer Venue, Ex. 9.)

Plaintiff alleges that ACH ignored Weintraub's medical request for three days. (Am. Compl. ¶ 24.) As a result, Plaintiff alleges that Weintraub's pain intensified and an ulcer developed and/or grew that went untreated by either PTS or ACH. (*Id.*) Other inmates at the DCDC noticed that Weintraub was moaning and groaning, sweating profusely, and had even passed out in the bathroom during this time. (*Id.* ¶¶ 25-26; Def.'s Mtn. Transfer Venue, Ex. 12 at 1; Def.'s Mtn. Transfer Venue, Ex. 14 at 2.) These inmates requested medical assistance on Weintraub's behalf. (Am. Compl. ¶¶ 22, 25-27; Def.'s Mtn. Transfer Venue, Exs. 12, 14.)

On the afternoon of April 23, an ACH nurse examined Weintraub for the first time and noted that he presented complaints of severe abdominal pain and reported to have passed out in the bathroom that morning. (Am. Compl. ¶¶ 28, 30; Def.'s Mtn. Transfer Venue, Ex. 8 at 1.) The nurse's examination notes indicate that Weintraub was fidgeting and flailing on the exam table and was unable to lay still for the assessment due to his pain. (Am. Compl. ¶ 28; Def.'s Mtn. Transfer Venue, Ex. 8 at 1.) The nurse gave Weintraub an antacid tablet and indicated that she would notify a doctor. (Am. Compl. ¶ 28.) Later that evening, Mr. Weintraub complained of intense abdominal pain, nausea, and that he had vomited blood. (Am. Compl. ¶¶ 30, 31.)

Early on the morning of April 24, ACH cleared Weintraub for transport to South Carolina after a final medical exam. (Am. Compl. ¶ 40; Def.'s Mtn. Transfer Venue, Ex. 8 at 2.) A PTS guard in charge of

---

1. The DCDC is not currently a party to this litigation.

transporting prisoners from the DCDC noted that Weintraub was complaining of pain while being loaded into the van, and that he felt it necessary to confirm with the DCDC medical staff that Weintraub was okay to travel. (Am. Compl. ¶ 38; Def.'s Mtn. Transfer Venue, Ex. 11 at 1.) Ten other inmates were transported with Weintraub that day to various locations in the southeast. (Am. Compl. ¶ 37; Def.'s Mtn. Transfer Venue, Ex. 11.) These inmates also noticed that Weintraub seemed ill while being loaded onto the van and during the trip. One inmate described Weintraub as sweaty, pale, and "looking like the 'walking dead'" while being loaded into the van. (Am. Compl. ¶ 37; Pl.'s Resp., Ex. A at 10.) Weintraub's fellow inmates observed that he was unable to get into the van on his own and had to be picked up by the PTS transport agents and loaded into the van. (Am. Compl. ¶¶ 37-38; Def.'s Mtn. Transfer Venue, Ex. 12 at 2.) Several inmates reported that the PTS and ACH employees made fun of Weintraub and mocked him. (Am. Compl. ¶ 39.)

Plaintiff alleges that during the early morning hours of April 25, 2014, approximately 15 minutes before pulling into the Union County, Georgia Sheriff's Office to drop off inmates, Weintraub fell over, slumped forward, urinated on himself, and became unresponsive to other inmates in the van. (Id. ¶ 41.) The inmates called out to the PTS agents that Weintraub needed help, but their requests were ignored. (Id.) When the van stopped at the Georgia detention center 15 minutes later, PTS agents checked on Weintraub and found him apparently deceased. (Id. ¶ 42.) An autopsy report prepared by the Georgia Bureau of Investigation determined that the cause of death was a perforated duodenal ulcer and septic infection. (Id. ¶ 46; Pl.'s Resp., Ex. H at 2.)

## B. Plaintiff's Asserted Claims

Plaintiff asserts a claim against PTS for negligence (Count I) and punitive damages (Count IV). Plaintiff alleges that PTS breached its duty of care in transporting Weintraub from Colorado to South Carolina by: (1) failing to stop at a hospital or take other action to evaluate, diagnose, and treat Weintraub's obvious and serious health complaints; (2) cutting off Weintraub's medications during transport; (3) ignoring obvious physical signs of a serious medical condition; (4) ignoring Weintraub's and other's requests for medical assistance; (5) and failing to stop and check on Weintraub when the other inmates notified PTS agents that he was unresponsive. (Am. Compl. ¶ 49.) Plaintiff further asserts that PTS, as the entity responsible for Weintraub's transport, maintained a continuous duty of care even after placing him in the custody of the DCDC and its contract medical provider ACH, and is therefore liable for any negligence of ACH "and any other person or party in the chain from the time PTS took custody of Dr. Weintraub on April 14, 2014, through the date of [his] death on April 25, 2014, under principal-agent and vicarious liability doctrines." (Id. ¶ 51.)

Plaintiff asserts claims against ACH for medical negligence (Count II), ordinary negligence (Count III), and punitive damages (Count IV). Plaintiff alleges that ACH breached the professional standards of care in the medical field during Weintraub's temporary detention at the DCDC by failing to: (1) perform a proper intake and medical screening as required by law and/or standard of care when Weintraub was first admitted to the DCDC; (2) provide antacids and/or appropriate medications and/or medical care in light of apparent signs of a severe ulcer; (3) have a

medical doctor exam and assess Weintraub in person after Weintraub's initial visit with ACH on April 23, 2014, after the ACH nurse examined Weintraub; (4) recognize that Weintraub was suffering from an infection most likely due to a puncture, perforation, or other hold/leak in his gastrointestinal tract; (5) timely and adequately evaluate and investigate Weintraub's complaints of severe abdominal pain, syncopal events, nausea, and vomiting; (6) evaluate and investigate Weintraub's significant weight loss, sweating, and other obvious signs of sickness; (7) recognize Weintraub's symptoms as potentially life-threatening and requiring immediate, emergency medical treatment; and (8) identify and treat Weintraub's duodenal and ulcer and acute infection. (Am. Compl. ¶¶ 54-57.)

Plaintiff further asserts that ACH and PTS were concurrently negligent and liable for Weintraub's death by: (1) failing to order admission for observation and further testing to investigate and rule out the cause of Weintraub's complaints; (2) failing to order an immediate transfer of Weintraub to a local emergency room or hospital for examination and treatment; and (3) clearing Weintraub for continued transport to South Carolina without performing and/or documenting an appropriate medical clearance evaluation. (Am. Compl. ¶ 57.) Finally, Plaintiff asserts that ACH is liable for ordinary negligence for the conduct of its non-licensed health care providers, administrators and managers who set administrative policies and procedures, provide oversight or training, or are involved in corporate decision making regarding patient care and treatment. (*Id.* ¶ 63.)

## II. ANALYSIS

Defendant PTS has moved to transfer this case to the Western District of Kentucky, as a more convenient forum pursuant to 28 U.S.C. § 1404(a). Defendant ACH has not joined in or offered a response in support or opposition to PTS's motion. In support of its motion to transfer, PTS argues, *inter alia*, that (1) as a non-Georgia resident Plaintiff's choice of forum is entitled to no deference; (2) the crucial analysis in this case is what took place between the dates of April 18, 2014 and April 24, 2014 at the DCDC in Owensboro, Kentucky; (3) the DCDC is a necessary party to this litigation but neither jurisdiction and venue are proper in Georgia; (4) the majority of crucial fact witnesses with personal knowledge are located in Kentucky, including all of the ACH and DCDC employee witnesses and all of the individuals who provided medical treatment to Weintraub from April 18 to April 25, 2014; (5) the Georgia witnesses have no meaningful testimony to offer regarding liability for Weintraub's death; and (6) Kentucky has a greater interest over Georgia in how its inmates are treated.

In opposition to Defendant PTS's motion to transfer, Plaintiff argues that his choice of forum here is proper and convenient because: (1) William Weintraub died in Georgia, specifically within the Northern District of Georgia; (2) more critical witnesses and evidence related to the nature and circumstances of Weintraub's death are located in Georgia than in any other jurisdiction; (3) venue would not be appropriate in Robert Weintraub's home state of Florida because there is no factual nexus at all to that state other than his residence there; (4) neither Defendant is a citizen or resident of Kentucky; (5) PTS's relevant employee witnesses are all residents of Tennessee; (6) several of the inmates in the van with Weintraub at the time of his death were headed to detention facilities in Georgia or were believed to be Georgia

citizens; (7) the Georgia Bureau of Investigation conducted an investigation into the circumstances surrounding Weintraub's death and the investigators are believed to be current residents of Georgia; (8) the GBI medical examiner in Atlanta, Georgia, performed Weintraub's autopsy; and (9) transfer to Kentucky would require Plaintiff to hire additional counsel in Kentucky and incur additional travel costs for himself and his expert witnesses thus increasing the cost of the litigation.

A district court may transfer a civil action pursuant to 28 U.S.C. § 1404(a) to another district where it might have been brought "[f]or the convenience of parties and witnesses [and] in the interest of justice." Thus, the first step under § 1404(a) is to determine whether the present action could have been brought in the United States District Court for the Western District of Kentucky. *Internap Corp. v. Noction Inc.*, 114 F.Supp.3d 1336, 1339 (N.D.Ga.2015) (citing *Tommy Bahama Group, Inc., v. The Walking Co.*, No. 1:07–CV–1402–ODE, 2007 WL 3156254, at * 2 (N.D.Ga. Oct. 18, 2007)).

█ Once a court confirms that Plaintiff could have brought the action in the transferee venue, it next looks to nine factors to determine the propriety of transfer:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency

and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir.2005). When considering transfer for venue purposes, "trial judges are afforded considerable discretion" in weighing the criteria under 28 U.S.C. § 1404(a). *Internap Corp.*, 114 F.Supp.3d at 1339; *Tommy Bahama*, 2007 WL 3156254, at * 2. In cases in which the plaintiff's choice of venue is proper under the applicable venue provisions, a motion to transfer under Section 1404(a) should not be granted lightly. 15 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3848 (4th ed. 2015).

### A. Whether the Action Could Have Been Brought in the Proposed Alternate Forum

█ As an initial matter, the Court must determine whether the present action could have been brought in the United States District Court for the Western District of Kentucky. *Internap Corp.*, 114 F.Supp.3d at 1339; *Tommy Bahama*, 2007 WL 3156254, at * 2. Neither Plaintiff nor Defendant addresses this point in their briefing on the Motion to Transfer Venue. A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(a).

Neither Defendant PTS nor Defendant ACH are residents of Kentucky. It is pos-

sible, considering their contacts with the state, that Defendants PTS and ACH are subject to personal jurisdiction in the Western District of Kentucky. Weintraub was housed at the DCDC in Owensboro Kentucky for seven of the twelve days he was in PTS's custody. Plaintiff asserts that Weintraub's condition worsened after he was admitted to the DCDC, where he requested and was provided some medical treatment for his stomach pain. Plaintiff alleges that the medical negligence of ACH, as contracted by the DCDC, contributed to Weintraub's subsequent death within hours after he left the Kentucky detention facility. Accordingly, the Court finds that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred at the DCDC such that the case could have originally been brought in the Western District of Kentucky. The Court now turns to the central issue in this case: whether the Western District of Kentucky would be a more convenient forum than the Northern District of Georgia.

### B. Whether Transfer to the Western District of Kentucky Is More Convenient for the Parties and Witnesses

■ In a motion to transfer under § 1404(a), the burden is on Defendant PTS to show that the balance of conveniences weighs in favor of the transfer. *E.g., Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir.2001); *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989).

### 1. Neutral factors

Six of the nine § 1404(a) factors neither weigh in favor nor against transfer of venue: the convenience of the witnesses, the availability of the compulsory process of the court, the convenience of the parties, the location of relevant documents and the relative ease of access to sources of proof, the locus of operative facts, and a forum's familiarity with governing law.

■ First, contrary to PTS's assertions, the convenience of the witnesses does not weigh in favor of transferring this case to Kentucky. Although the convenience of party witnesses is relevant, the critical determination under this factor is the convenience of the forum to key non-party witnesses on a defendant's liability. *Nam v. U.S. Xpress, Inc.*, No. 1:10–CV–3924–AT, 2011 WL 1598835, at *7 (N.D.Ga. Apr. 27, 2011); *Ramsey v. Fox News Network, LLC*, 323 F.Supp.2d 1352, 1357 (N.D.Ga.2004); *Rigby v. Flue–Cured Tobacco Coop. Stabilization Corp.*, No. 7:05–CV–122 (HL), 2006 WL 1312412, at *5 (M.D.Ga. May 11, 2006); *Merswin v. Williams Companies, Inc.*, No. 1:08–CV–2177–TWT, 2009 WL 249340, at *6–7 (N.D.Ga. Jan.30, 2009) (Thrash, J.). The convenience of key non-party witnesses is afforded more weight in the transfer analysis because they may be unwilling to testify, given the preference when possible, of live testimony over other means of presenting evidence, and the district in which the case is tried has a direct effect on whether parties can compel non-party witnesses to testify. *Nam*, 2011 WL 1598835, at *7 (citing *Rigby*, 2006 WL 131412, at *5 and *Ramsey*, 323 F.Supp.2d at 1356–1357). The convenience of a certain venue for party witnesses is given less weight because "[p]arty witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to a non-party witness." *Id.* (quoting *Ramsey*, 323 F.Supp.2d at 1356–1357).

PTS identifies twelve witnesses located in Kentucky. (Def.'s Mtn. Transfer Venue at 11-14.) However, nine of the twelve witnesses are employees of party-defendant ACH and their convenience is therefore given less weight. According to PTS, the key non-party witnesses in Kentucky are DCDC correctional officers, Sergeant Raygen Bennett, Jailer David Osborne, and Officer W. DeWayne Edgell. Defendant argues that the employees of the DCDC are key witnesses because they have personal knowledge of what occurred in the days leading up to Weintraub's death, and can therefore provide testimony in relation to the alleged liability of Defendants. Defendant believes that DCDC employees can also speak to the contractual relationship between PTS and the DCDC, and that they can shed light on Weintraub's medical condition upon arrival to the DCDC. Defendant also contends that several inmates can provide information about Weintraub's condition leading up to his death, his requests for medical assistance, and the manner in which he was treated at the DCDC. However, the location of these inmates is unclear, as explained below.

Plaintiff argues the key non-party witnesses in this case include GBI investigators, the GBI Medical Examiner, first responder EMTs, law enforcement personnel, and the inmates in the transport van at the time of Weintraub's death. (Pl's Resp. at 8-9.) Of these witnesses, the investigators, the Medical Examiner, first responders, and law enforcement personnel are in Georgia. In response, PTS argues that investigators from the Georgia Bureau of Investigation (the "GBI") are not key non-party witnesses because they have no personal knowledge regarding the liability of ACH or PTS. Despite Defendant's arguments to the contrary, these witnesses are necessary for the admission of a significant amount of evidence in this case, including the GBI investigation file and the coroner's report, and thus they amount to key non-party witnesses. The current locations of the inmates in the van with Weintraub are less clear. At least eight of the ten inmates in the PTS van were headed to final destinations in Georgia. However, of the ten inmates interviewed by the GBI after Weintraub's death, none are listed as current inmates by the Georgia Department of Corrections, and only one is currently on parole in Georgia. Furthermore, the home addresses listed for these inmates in the GBI report include Alabama, Arkansas, California, Georgia, Louisiana, New York, and Pennsylvania.

Both parties argue that the presence of key non-party witnesses in their preferred forum necessitates venue in that forum. However, the location of non-party witnesses, taken as a whole, does not determine which venue is more convenient because the non-party witnesses are distributed in Georgia and Kentucky, and any number of other locations in the case of the inmates who traveled with Weintraub in the van. Because this factor is not conclusive, it does not weigh in favor of either venue.

For these same reasons, the subpoena power of either court to compel witness testimony is a wash. On the one hand, if the case remains in Georgia, certain non-party witnesses—employees of the Kentucky detention facility—may not be compelled to testify live at trial and it may be necessary to present their testimony via videotaped deposition. On the other hand, if the case is transferred to Kentucky, other non-party witnesses in Georgia—the

GBI agents, first responder EMTs, the GBI Medical Examiner, and a few of the inmates from the transport van—would not be subject to the Kentucky court's subpoena power. In addition, numerous other party and non-party witnesses do not reside in either Georgia or Kentucky—employees of PTS who reside in Tennessee and the remaining inmates scattered throughout the country—and thus would not be subject to either court's compulsory process. Thus, the ability to compel the attendance of these witnesses is not determinative. On balance, because the key non-party witnesses are located in both Georgia and Kentucky, and scattered elsewhere, this factor is neutral.

█ The "convenience of the parties" likewise does not determine the transfer question. None of the parties reside in Kentucky. PTS, a Tennessee corporation that provides national contract transportation services, argues that Kentucky is significantly more convenient than Georgia because the DCDC is a necessary party that cannot be joined if the case remains in Georgia and can only be added in Western District of Kentucky.[2] Plaintiff, a Florida resident, argues that Georgia is a more convenient forum because traveling to Atlanta, Georgia is easier than traveling to Owensboro, Kentucky. Plaintiff also argues that he will have to retain additional counsel in Kentucky if venue is transferred, which would add to the cost of litigation. Accordingly, the Court finds that because there are advantages and disadvantages to either party depending on the venue, this factor does not weigh for or against transfer.

█ The "locus of operative facts" factor is also neutral. PTS asserts that the focus of this case is what happened to Weintraub in Kentucky where the alleged medical negligence occurred, while Plaintiff asserts that the locus of operative facts is in Georgia where the death allegedly occurred and was investigated. Plaintiff alleges that Weintraub first showed symptoms of his illness in Boulder, Colorado. When PTS took custody of him on April 14, 2014, Plaintiff alleges PTS discontinued the medications he had been prescribed for his stomach pain before embarking on a roaming multi-state journey from Colorado to Utah before arriving in Kentucky. Plaintiff alleges that during this five-day trip, Weintraub's condition worsened. After spending seven days at the Kentucky detention facility, PTS cleared Weintraub for transport to South Carolina. During this trip, Plaintiff alleges that Weintraub's condition became critical and PTS agents ignored the other inmates' requests to check on Weintraub before he was discovered dead in the van when it arrived at the Union County, Georgia, Sheriff's Office. Thus, although the events and omissions resulting in Weintraub's death span across several states, it appears the bulk of relevant operative facts giving rise to Plaintiff's claims occurred not in a single core location, but are split between Kentucky, Georgia, and perhaps Colorado. Accordingly, this factor does not weigh for or against transfer of venue.

2. The Court does not make any determination regarding whether PTS is correct that DCDC is a necessary party or whether this Court would lack personal jurisdiction over the DCDC under the circumstances of this case. However, the Court notes that to the extent PTS is found liable for the negligence of DCDC, PTS can seek indemnification after entry of judgment in a separate suit against DCDC. Thus, the Court does not find that PTS's desire to transfer this case to Kentucky so that it can join DCDC is a significant interest that warrants transfer under the totality of the circumstances.

■ Defendant PTS did not address in its motion whether the location of relevant documents and the relative ease of access to proof weighed in favor of transfer. In its reply, however, PTS asserts that there are many crucial documents that are located in Kentucky, including "the records of the DCDC" and "the policies and procedures for both DCDC and ACH, documentation as to whether there are issues with insufficient staffing, lack of timely response, complaints from inmates, internal action taken by either DCDC or ACH, etc." (Reply at 5.) PTS does not identify any other sources of proof and does not address the relative ease of access to the documents other than stating that these documents "require discovery." (*Id.*) Plaintiff contends that this factor weighs against transfer because (1) the GBI investigative file and autopsy report were prepared in Georgia, (2) these "Georgia-based" files contain key facts regarding Defendants' liability and photographs taken of the scene, and (3) the witnesses who can authenticate and describe the documents and the investigative process are in Georgia and are subject to subpoena to appear in this district, along with other key eye-witnesses.

Since the predominance of electronic discovery in the modern era, most courts have recognized that the physical location of relevant documents is no longer a significant factor in the transfer inquiry. *See, e.g., Steifel Labs., Inc. v. Galderma Labs., Inc.,* 588 F.Supp.2d 1336, 1340 (S.D.Fla. 2008) ("Defendant has not demonstrated that there is any particular difficulty in producing the materials or relevant documents, whether in Florida or Texas. Moreover, this Court believes that, in the current world of expedited transfer of information, assembly and production of any necessary information can be produced just as easily in this District as in Texas."); *Capella Phototonics, Inc. v. Cisco Systems, Inc.,* 2014 WL 3673314, at * 6 (S.D.Fla. July 23, 2014); *Trafalgar Capital Specialized Investment Fund v. Hartman,* 878 F.Supp.2d 1274, 1288 n. 3 (S.D.Fla. 2012) (noting that "document production is not as onerous as it once was, and scores of file boxes filled with paper in Nevada need not travel across the country to Miami, but may be transported via electronic format"); *Polyform A.G.P. Inc. v. Airlite Plastics Co.,* 4:10–cv–43(CDL), 2010 WL 4068603, at *4 (M.D.Ga. Oct. 15, 2010). Although PTS asserts that some key documents are located in Kentucky, it has offered no argument why these documents cannot be easily provided via electronic production. Accordingly, this factor is neutral.

■ Finally, the "forum's familiarity with the governing law" does not swing either way here. Plaintiff contends that Georgia law on ordinary negligence, medical negligence, and damages govern this case. PTS does not contest the applicability of Georgia law,[3] but merely contends that the law governing medical malpractice claims is not substantially different between Georgia and Kentucky, and that a district court in Kentucky would be able to apply Georgia law if necessary.[4] This reasoning works both ways, however, because

---

3. Defendant notes that PTS and the DCDC have a contractual relationship, and that under Georgia's choice of law principles Kentucky law would govern any interpretations of the contract. (Def.'s Reply at 12.)

4. The Court accepts Defendant's assertion that medical malpractice law is similar between Georgia and Kentucky. Diversity suits often require federal judges to apply laws of different states. Absent a significant difference between the laws of Georgia and Kentucky,

a federal court sitting in Georgia could just as easily apply Kentucky law. Accordingly, the Court finds that this factor is also neutral.

### 2. Factors against transfer

The remaining factors do not favor transfer of venue to Kentucky.

 The "comparison of the relative means of the parties" factor points in favor of Georgia. Plaintiff contends that the additional legal and transportation costs caused by a transfer of venue would be financially difficult for Robert Weintraub, who is retired and of modest means. By contrast, Plaintiff asserts that Defendant PTS is a large and established company with significantly greater means than Robert Weintraub, and PTS does not contest this assertion. In light of the apparent disparity in the financial means of the parties, the Court finds that this factor weighs in favor of keeping the case in this district.

 Finally, Plaintiff's choice of forum weighs in favor of Georgia. Generally, the plaintiff's choice of forum is given great deference when considering a motion to transfer, and this is especially true where the operative facts giving rise to the action occurred in the chosen forum. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100–01 (11th Cir.2004) (citing *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1314–15

(11th Cir.2001); *Haworth, Inc. v. Herman Miller, Inc.*, 821 F.Supp. 1476, 1479 (N.D.Ga.1992); *Garay v. BRK Electronics*, 755 F.Supp. 1010, 1011 (M.D.Fla.1991). However, Plaintiff's choice of forum may be entitled to less weight when none of the parties reside in the chosen forum. *E.g.*, *Ramsey*, 323 F.Supp.2d at 1355. As Plaintiff points out, he could not have filed this action in his resident state of Florida, as none of the facts giving rise to the claims asserted occurred in Florida, and none of the Defendants are citizens of Florida. "In the absence of a clear difference in convenience, the plaintiff's choice of forum is determinative." *Garay v. BRK Electronics*, 755 F.Supp. 1010, 1011 (M.D.Fla.1991); *see also Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1314–15 (11th Cir.2001) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). Thus, this factor weighs slightly in favor of keeping the case in this district.

### III. CONCLUSION

PTS has failed to show even a single factor that weighs in favor of transferring this case to Kentucky. Thus, PTS has not carried its burden in demonstrating that the totality of the circumstances, judicial economy or the interests of justice, weigh in favor of transfer.[5] Accordingly, the Court **DENIES** Defendant's Motion to Transfer [Doc. 20].

**IT IS SO ORDERED** this 26th day of October, 2015.

---

there is no reason why a federal court in one state could not apply the law of another.

5. The Court recognizes that Kentucky residents may have a strong local interest in the treatment of inmates in a Kentucky detention

center, but notes that this is only one of several facets of the case and that the local interest of Kentuckians and Georgians is not determinative.