[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13849

_____

AFC FRANCHISING, LLC,

Plaintiff-Appellant,

*versus*

DANILO PURUGGANAN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:20-cv-00456-JHE

_____

Before NEWSOM, TJOFLAT, and ED CARNES, Circuit Judges.

NEWSOM, Circuit Judge, delivered the opinion of the Court.

TJOFLAT, Circuit Judge, filed a concurring opinion.

NEWSOM, Circuit Judge:

In this case, we must decide whether Danilo Purugganan consented to personal jurisdiction and venue in the Northern District of Alabama by agreeing to a "floating" forum-selection clause. We hold that, in the circumstances presented, the clause is applicable and enforceable. Accordingly, we reverse the district court's contrary decision and remand for further proceedings.

I

AFC Franchising is an Alabama LLC with its principal place of business in Shelby County, Alabama. Purugganan is a resident of New York. In 2009, Purugganan signed a "Master Developer Agreement" with another company, Doctors Express Franchising, to develop urgent-care centers in New York and Connecticut. Doctors Express was an LLC with its principal place of business in Maryland, and the parties agreed that the contract would be governed by Maryland law.

After a series of acquisitions, AFC was assigned Doctors Express's end of the bargain in 2013, and Purugganan was notified of the assignment. It is undisputed that this assignment was permissible. Indeed, the Master Developer Agreement expressly authorized Doctors Express to "change [its] ownership or form and/or

assign th[e] Agreement and any other agreement to a third party without restriction." Doc. 1-2 at 17.

As particularly relevant here, the Master Developer Agreement—which Doctors Express drafted—contains the following forum-selection provision:

> You and your owners agree that all actions arising under this Agreement or otherwise as a result of the relationship between you and us must be commenced in a state or federal court of competent jurisdiction within such state or judicial district *in which we have our principal place of business at the time the action is commenced*, and you (and each owner) irrevocably submit to the jurisdiction of those courts and waive any objection you (or the owner) might have to either the jurisdiction of or venue in those courts.

*Id.* at 26 (emphasis added). This is known as a "floating" forum-selection clause because it ties the chosen forum to a mutable fact—here, the franchisor's principal place of business. *See* Dale Joseph Gilsinger, *Enforceability of Floating Forum Selection Clauses*, 39 A.L.R.6th 629 § 2 (2008) ("A 'floating' forum selection clause is defined as a clause which, rather than designating a forum by immutable geographical place name, designates the exclusive forum for all litigation regarding the agreement . . . by reference to mutable facts . . . .").

When the parties' relationship soured, Purugganan threatened to sue AFC in either Connecticut or New York. AFC believed that the floating forum-selection clause required Purugganan to

sue in Alabama, where AFC had its principal place of business. It thus sought a declaratory judgment in Alabama state court (1) that the parties had to litigate their dispute in Alabama and (2) that AFC hadn't breached the Master Developer Agreement.

Purugganan removed the action to the United States District Court for the Northern District of Alabama, and the parties agreed to have the case decided by a magistrate judge. *See* 28 U.S.C. § 636(c). Purugganan then moved to dismiss for lack of personal jurisdiction and improper venue. In the alternative, Purugganan asked the magistrate judge—who, given the parties' consent, acted on behalf of the district court—to transfer this case to Connecticut, where he has since sued AFC.

The district court sided with Purugganan on the personal-jurisdiction issue. First, it concluded that Purugganan lacked "minimum contacts" with Alabama. Second, and more importantly for present purposes, the court held that Purugganan hadn't contractually waived his personal-jurisdiction defense by agreeing to the forum-selection provision. Even though AFC took over as Doctors Express's assignee and had its principal place of business in Alabama, the court reasoned, there was "no reference to assignees in the Master Develop[er] Agreement's forum selection clause."

20-13849              Opinion of the Court                 5

Accordingly, the district court granted Purugganan's motion to dismiss. AFC timely appealed.[1]

## II

We begin our analysis from a place of relative agreement between the parties—what law to apply. We then turn to the merits of the personal-jurisdiction dispute.

## A

It is well settled that state law governs issues of contract interpretation that arise in a diversity action. *See, e.g.*, *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). Here, the Master Developer Agreement provides that the contract and all claims arising from it are "governed by the laws of the State of Maryland." Doc. 1-2 at 26. Neither party disputes the applicability of that choice-of-law clause. So we will apply Maryland law in our interpretation of the agreement.

The next question is whether state or federal law governs the enforceability of the forum-selection clause. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 71 (1938). "When deciding to apply federal or state law to a forum selection clause, the context in which the clause is asserted can be determinative." *Preferred Cap., Inc. v.*

---

[1] We review the dismissal of an action for lack of personal jurisdiction de novo. *See Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021). The same goes for questions related to the interpretation and enforceability of a forum-selection clause. *See Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1235 (11th Cir. 2011).

*Sarasota Kennel Club, Inc.*, 489 F.3d 303, 306 (6th Cir. 2007). For instance, in a diversity action involving a transfer motion, "[c]onsideration of whether to enforce a forum selection clause . . . is governed by federal law, under 28 U.S.C. § 1404(a)." *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (per curiam). But at least in some cases in which a defendant moves to dismiss for lack of personal jurisdiction, this Court has held that "we must apply state law." *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 918–19 (11th Cir. 1989).

We needn't wade into these *Erie* waters today, as the parties agree that Maryland law should apply, and Maryland has "adopt[ed] the federal standard for analyzing the enforceability of forum-selection clauses." *Peterson v. Evapco, Inc.*, 188 A.3d 210, 228 (Md. Ct. Spec. App. 2018) (citing *Gilman v. Wheat, First Sec., Inc.*, 692 A.2d 454, 462–63 (Md. 1997)).[2] Thus, we "can apply state and federal law harmoniously" to the enforceability issue at hand. *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1307 (11th Cir. 2002).

## B

That brings us to the heart of the parties' dispute—whether the exercise of personal jurisdiction over Purugganan would

---

[2] Though we accept the parties' agreement that we must apply Maryland law—and its incorporation of the federal standard—we note that there is similarly "no conflict between Alabama and federal law regarding the validity of forum selection clauses." *Rucker*, 632 F.3d at 1236.

20-13849                    Opinion of the Court                    7

violate due process.[3] "Normally," the Due Process Clause requires us to "consider whether the defendant purposefully established 'minimum contacts' with the forum state." *Alexander Proudfoot*, 877 F.2d at 921 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  But "because the personal jurisdiction requirement is a waivable right," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985), the normal "due process analysis is unnecessary where a nonresident defendant has consented to suit in a forum," *Alexander Proudfoot*, 877 F.2d at 921.  In that case, so long as a forum-selection clause is applicable and "not 'unreasonable and un-just,' [its] enforcement does not offend due process." *Burger King*, 471 U.S. at 472 n.14 (citation omitted) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991).

---

[3] In most cases, we use a two-step approach to analyze personal-jurisdiction issues.  "First, we determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).  "Second, we examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause." *Id.*  In this case, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

1

We start, then, by analyzing whether the floating forum-selection clause applies to this dispute. Again, that provision provides as follows:

> You and your owners agree that all actions arising under this Agreement or otherwise as a result of the relationship between you and us must be commenced in a state or federal court of competent jurisdiction within such state or judicial district *in which we have our principal place of business at the time the action is commenced*, and you (and each owner) irrevocably submit to the jurisdiction of those courts and *waive any objection you (or the owner) might have to either the jurisdiction of or venue in those courts*.

Doc. 1-2 at 26 (emphases added). Clearly, Purugganan waived objections to personal jurisdiction in the "state or judicial district," to use the contract's language, "in which *we* have *our* principal place of business at the time the action is commenced." Who, though, is the "we" and "our" in that phrase? That is the pivotal question.

Purugganan says that phrase refers to the principal place of business of Doctors Express—and only Doctors Express—as the original party to the Master Developer Agreement. AFC contends, by contrast, that the phrase now refers to *its* principal place of business because—as a valid assignee—it succeeded to all of Doctors Express's rights and obligations under the contract.

We agree with AFC. The Master Developer Agreement explicitly authorizes Doctors Express to "assign th[e] Agreement . . . to a third party without restriction." *Id.* at 17. And under Maryland law, when a contract "is transferred by assignment, the assignee steps into the [assignor]'s shoes and acquires *all* the [assignor]'s rights" under the contract. *Italian Fisherman, Inc. v. Middlemas*, 545 A.2d 1, 4 (Md. 1988) (emphasis added). That is, the "rights of an assignee are concomitant to those of an assignor"—"no more, no less." *Nationstar Mortg. LLC v. Kemp*, 258 A.3d 296, 301 (Md. 2021) (quoting *Univ. Sys. of Md. v. Mooney*, 966 A.2d 418, 430 (Md. 2009)). Applying this principle, it seems to us that AFC (the assignee) holds the same right as Doctors Express (the assignor) to litigate in the state or judicial district containing its principal place of business—especially given that the Master Developer Agreement contemplates an unrestricted right of assignment.

True, the contract indicates at the outset that it would use the terms "we," "us," and "our" to refer to Doctors Express. *See* Doc. 1-2 at 1 ("DOCTORS EXPRESS FRANCHISING, LLC, a Maryland limited liability company, located at 8600 LaSalle Road, Suite 326, Towson, Maryland 21286 ('we,' 'us,' or 'our')"). But applying a dose of common sense, we don't think that parenthetical notation was meant—and shouldn't be understood—to limit the contractual rights of Doctors Express's assignees. *See Credible Behav. Health, Inc. v. Johnson*, 220 A.3d 303, 313 (Md. 2019) ("As a bedrock principle of contract interpretation, Maryland courts consistently strive to interpret contracts in accordance with common sense."

10                    Opinion of the Court                    20-13849

(quotation marks omitted)).  It was instead meant to clarify that the shorthand uses of "we" and "our" refer to the franchisor *generally*, as distinct from the terms "you" and "your," which refer to the master developer.

Basic interpretive principles confirm this common-sense reading.  Consider, first, the whole-text canon.  "As with the interpretation of a statute," Maryland courts (and thus we) don't construe contractual "language in isolation, but consider[] that language in relation to the entire contract." *Impac Mortg. Holdings, Inc. v. Timm*, 255 A.3d 89, 96 (Md. 2021); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("The text must be construed as a whole.").  Here, the Master Developer Agreement repeatedly uses the terms "we" and "our" to define the rights and obligations of the franchisor.[4]

---

[4] *See, e.g.*, Doc. 1-2 at 2 ("We will have the sole right to approve Prospects . . . ."); *id.* (providing that, if the developer breaches the Master Developer Schedule, "we have the right to terminate this Agreement" via written notice); *id.* at 3 ("Provided that you are in compliance with the terms of this Agreement, we will not grant another master developer the right to solicit Prospects . . . in the Territory."); *id.* at 7 ("For any Prospect that you refer to us and with whom we sign a Franchise Agreement . . . we will pay to you fifty percent (50%) of the Initial Franchise Fee . . . paid to us by that Prospect."); *id.* at 8 ("For each Franchisee . . . that you perform Service Responsibilities and Monitoring Responsibilities for in the Territory, we will pay to you an amount equal to two and one-half percent (2.5%) of such Franchisee's Gross Sales . . . ."); *id.* at 10 ("We will provide you a franchise marketing strategy . . . ."); *id.* at 11 ("We will provide you with a description of how to perform the Servicing Responsibilities and Monitoring Responsibilities . . . ."); *id.* at 14 ("We

And yet the parties knew—and all still agree—that the franchisor could assign the agreement "without restriction." So, if the parties meant to ascribe some rights and obligations to Doctors Express specifically and others to Doctors Express and its assignees more generally, one would expect them to have used varying language to that effect throughout the agreement—or, at the very least, to have carved out certain rights explicitly. The Master Developer Agreement did neither.

That brings us to another interpretive canon: Words "used by the parties in one sense will be given the same meaning throughout the contract in the absence of countervailing reasons." 11 Williston on Contracts § 32:6 (4th ed., May 2022 Update); *see also Leadroot v. Leadroot*, 810 A.2d 526, 532 (Md. Ct. Spec. App. 2002); Scalia & Garner, *supra*, at 170 ("A word or phrase is presumed to bear the same meaning throughout a text . . . ."). Neither Purugganan nor the district court offers any good reason why the terms "we" and "our" would mean something different in the forum-selection clause than in other parts of the Master Developer Agreement. And once we attribute identical meaning to those words throughout the contract, Purugganan's position proves too much. He insists that "we" and "our" "can be interpreted only as referring

_____

agree to reimburse you for all damages and expenses that you incur in any trademark infringement proceeding . . . ."); *id.* at 17 ("We may change our ownership or form and/or assign this Agreement . . . to a third party without restriction."); *id.* at 25 ("Before you and we may bring an action in court against the other, you and we must first meet to mediate the dispute . . . .").

to Doctors Express." Br. of Appellee at 15. But as just explained, the Master Developer Agreement employs those shorthand terms to delineate the parties' ongoing rights and obligations. Accordingly, Purugganan's proposed interpretation would deprive the assignment—which again, the contract explicitly authorized—of meaningful effect. That can't be what the parties intended. Rather, by accepting assignment of the Master Developer Agreement, AFC "step[ped] into the shoes of its assignor" and became the "we" and "our" referenced throughout the contract. *Nationstar*, 258 A.3d at 309; *see also, e.g.*, *Midland Funding, LLC v. Briesmeister*, 640 S.W.3d 672, 682–85 (Ark. Ct. App. 2022) (concluding that "we," "us," and "our" included assignees for purposes of an arbitration clause even though the contract used those terms to reference the assignor).

Purugganan raises three counterarguments—none of which persuades us. *First*, he invokes language from one of our cases stating that a forum-selection clause "is viewed as a separate contract." *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1238 (11th Cir. 2011). To the extent that Purugganan reads this language as constraining us from looking to other provisions of the Master Developer Agreement for assistance in discerning the meaning of "we" and "our" in the forum-selection clause, he is incorrect. The severability of a forum-selection clause doesn't alter the basic rule of construction that "[a] writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together." Restatement (Second) of Contracts § 202(2) (Am. Law. Inst. 1981);

see also Rocks v. Brosius, 217 A.2d 531, 545 (Md. 1966) (similar). Nothing in our decision in Rucker suggests otherwise. Rucker stands for the more modest proposition that a forum-selection clause isn't automatically rendered unenforceable if one of the parties claims that the contract of which it is part is void or voidable due to fraud, illegality, etc. See 632 F.3d at 1238. In that circumstance, the parties must litigate the voidness issue in the forum they have chosen to resolve their disputes—that is, unless the forum-selection clause is itself unenforceable. See id.

To the extent that Purugganan instead means, by his citation to Rucker, to argue that the forum-selection clause is a separate agreement that can't be assigned along with the main contract, we disagree. It is part of the assignable Master Developer Agreement, even if the provision could be "sever[ed]" upon an allegation that the contract is void. Id. Further, we note that even if we were to read Rucker as broadly as Purugganan appears to, it wouldn't necessarily help him; the Master Developer Agreement, after all, provides that Doctors Express could "assign th[e] Agreement and any other agreement to a third party without restriction." Doc. 1-2 at 17 (emphasis added).

Second, Purugganan relies on a provision in the Master Developer Agreement stating that "nothing in th[e] Agreement is intended or deemed to confer any rights upon any person or legal entity not a party to th[e] Agreement." Id. at 27. From that, he argues that only Doctors Express has the right to enforce the forum-selection clause. This argument is likewise unavailing. To be

sure, the quoted provision helped to clarify that there were no intended third-party beneficiaries *when the agreement was executed*. But recall that the contract also expressly contemplated assignment by Doctors Express, and thus that its assignees could obtain rights in the future. Simply put, then, the specific provision authorizing the transfer of rights by assignment trumps the general no-third-party-beneficiaries clause. *See Fed. Ins. Co. v. Allstate Ins. Co.*, 341 A.2d 399, 407 (Md. 1975) ("Where two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it.").

*Finally*, Purugganan asserts that the contract should be construed against AFC as the assignee of the drafter. But the rule of *contra proferentum* "applies 'only as a last resort' when the meaning of a provision remains ambiguous after exhausting the ordinary methods of interpretation." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) (quoting 3 Corbin on Contracts § 559 (1960)). For the reasons already explained, we don't think that the floating forum-selection clause here is ambiguous once it is understood in its proper context. *See, e.g.*, *Credible Behav. Health*, 220 A.3d at 314.

We therefore conclude that the forum-selection clause is applicable to this suit in the Northern District of Alabama, where AFC has its principal place of business.

## 2

Having determined that this suit falls within the scope of the forum-selection clause, the question then becomes whether the clause is enforceable. We hold that it is.

Where a forum-selection clause would otherwise apply, the party resisting it has the burden of demonstrating—by "a strong showing"—that enforcement would be "unfair or unreasonable under the circumstances." *Don't Look Media, LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1297 (11th Cir. 2021) (quotation omitted). That is no easy task. To satisfy his burden, the party resisting enforcement must show that (1) the clause "was induced by fraud or over-reaching; (2) [he] would be deprived of [his] day in court because of inconvenience or unfairness; (3) the chosen law would deprive [him] of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.* (quotation omitted); *accord Gilman*, 692 A.2d at 463. Absent one of those circumstances, a court should enforce the forum-selection clause according to its terms. "Freedom of contract requires no less." *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 610 (7th Cir. 2006).

Purugganan hasn't met his burden of showing that enforcing the floating forum-selection clause here would be unreasonable or unjust. To start, we see no fraud or overreaching. In making this determination, "we look to whether the [forum-selection] clause was reasonably communicated." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam). This Court's "two-part test of 'reasonable communicativeness' takes

16                    Opinion of the Court                  20-13849

into account the clause's physical characteristics and whether the [resisting party] had the ability to become meaningfully informed of the clause and to reject its terms." *Id.* Purugganan doesn't complain about the clause's physical characteristics. And as already explained, when read in context, the clause unambiguously extends to assignees. Thus, we believe that the contract's express reference to the franchisor's broad right of assignment gave Purugganan—a businessman who acknowledged that he had "read th[e] agreement" and was "afforded an opportunity" both to "ask any questions" and to have the agreement "reviewed by an attorney," Doc. 1-2 at 34–35—the ability to meaningfully inform himself about the forum-selection clause's scope. So even if we construe Purugganan's arguments to suggest fraud or overreaching, they don't render the clause unenforceable.

There is also no indication that Alabama is so unfair or inconvenient a forum as to effectively deprive Purugganan, a New York resident, of a remedy or his day in court. *See Shute*, 499 U.S. at 594–95 (enforcing forum-selection clause in an adhesion contract that required cruise-ship passengers from Washington State to litigate their dispute in Florida).[5]

---

[5] To be clear, we don't hold that a floating forum-selection clause could *never* be unreasonable or unenforceable. This might be a different case if the agreement required Purugganan to litigate his "essentially local disputes in a remote alien forum." *The Bremen*, 407 U.S. at 17. But we're talking about Alabama, not Albania. And Purugganan appears to be a relatively sophisticated

Nor has Purugganan identified any public policy that would be frustrated by enforcement. In fact, enforcing this forum-selection clause *furthers* a fundamental policy of contract law—that parties are generally free to structure their affairs through legally binding promises. *See, e.g.*, 15 Corbin on Contracts § 79.4 (2022); *The Bremen*, 407 U.S. at 11. And even beyond respecting the parties' rights to structure their affairs, there are good reasons to enforce an assignable, floating forum-selection clause. Most notably, "public policy supports the enforcement of the forum selection clause to allow for the marketability" of the commercial agreement. *Liberty Bank, F.S.B. v. Best Litho, Inc.*, 737 N.W.2d 312, 317 (Iowa Ct. App. 2007). If courts refuse to enforce such provisions, "assignors [will] have to compensate their assignees for having to litigate in an inconvenient forum." *IFC Credit Corp.*, 437 F.3d at 613. In turn, "they will have to charge a higher price to their customers" and contractual partners. *Id.*; *see also Shute*, 499 U.S. at 594.

Purugganan counters that "Alabama was not contemplated as a possible forum for this dispute because Doctors Express was not located there."[6] Br. of Appellee at 15. We have no reason to

---

businessman, investing $189,000 to become the master developer for his territory. Those considerations further weigh against us holding that enforcement would be unreasonable in these circumstances.

[6] At oral argument, Purugganan retreated somewhat from this position, admitting that Doctors Express could have moved to another state—like Alabama—and enforced the forum-selection clause there. *See* Oral Arg. at 18:13–19:06. Even so, he maintained that Doctors Express's successors or assigns

doubt that Purugganan didn't specifically imagine litigating in Alabama when he signed the Master Developer Agreement. But that frames the issue too narrowly. After all, Purugganan knew that the litigation forum could change over the 15-year life of this contract. He likewise knew that the bargained-for forum would depend on the location of the franchisor's principal place of business "at the time the action is commenced." And he knew that the franchisor could assign its rights and obligations under the agreement "to a third party without restriction." These provisions provide "ample notice that the agreement[] could be assigned" and that Purugganan might have to litigate in a different forum—including, potentially, Alabama. *Liberty Bank*, 737 N.W.2d at 316. While he "may be dissatisfied with the litigation forum, it is not our task to save [him] from the consequences of an agreement [he] freely entered into." *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 724 (6th Cir. 2006).

★  ★  ★

In sum, the district court erred in dismissing for lack of personal jurisdiction. By voluntarily agreeing to an applicable and enforceable floating forum-selection clause, Purugganan waived his right to contest personal jurisdiction in this dispute.

---

couldn't do the same. As explained in text, we disagree with the distinction that Purugganan seeks to draw.

### III

It follows from what we have said that Purugganan also waived any objections to venue.[7]  For the reasons already explained, Purugganan agreed to litigate in the "state or judicial district in which we"—which we have held includes AFC—"ha[d] our"—which we have held includes AFC's—"principal place of business at the time th[is] action [was] commenced."  So too, he agreed to "waive any objection" to "venue" in those courts.  At the time of filing, AFC had its principal place of business in Shelby County, which is in the Northern District of Alabama.  *See* 28 U.S.C. § 81(a)(3).  And that settles the venue issue.  Because the forum-selection clause is both applicable and enforceable here, Purugganan can't raise his venue objection now.  *See Peterson v. BMI Refractories*, 124 F.3d 1386, 1391 (11th Cir. 1997) ("As with other procedural defects, parties can waive venue requirements.").

In response, Purugganan offers no reason why he might have consented to personal jurisdiction but not venue.  Instead, he submits that AFC "[forfeited] its venue argument, which does not appear in its opening brief."  Br. of Appellee at 30.  That is incorrect—AFC's brief "specifically and clearly identified" the venue issue.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).  AFC framed the issue statement in its brief as "whether

---

[7] The district court didn't address venue, so normally we wouldn't either. That said, because the venue issue rises or falls, as a matter of law, with the personal-jurisdiction issue, we see no reason to delay its resolution.

20                    Opinion of the Court                    20-13849

consent to personal jurisdiction *and venue*" was established by the forum-selection clause.  Br. of Appellant at 1 (emphasis added).  It then devoted three of the argument's nine pages to venue, under a subject heading that specifically referenced the topic.  *See id.* at 14–16.  Finally, AFC closed its brief by asking us to hold that Purugganan "has consented to venue in Alabama," in addition to "revers[ing] the district court's judgment of dismissal" for lack of personal jurisdiction.  *Id.* at 17.  Taken together, that was more than enough to preserve the venue issue.

★  ★  ★

We **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

TJOFLAT, Circuit Judge, Concurring:

I concur because I agree the forum selection clause provides the Northern District of Alabama with personal jurisdiction over Purugganan.  I write separately to demonstrate the futility and inefficiency of seeking a declaration on the meaning of a forum selection clause when, as here, a parallel proceeding in another court is either imminent or ongoing.  To make this demonstration, I first lay out the relevant facts and decisions from the ongoing parallel proceedings in the United States District Court for the District of Connecticut.  With that in mind, I then explain why our decision today will have no impact on the Connecticut District Court's decision-making.  Finally, I close with a discussion on the foolishness of this sort of anticipatory litigation.

## I.

As the Majority opinion recounts, Doctors Express Franchising and Danilo Purugganan entered into a Master Developer Agreement ("MDA") in 2009 that contained a floating forum selection clause.  Maj. Op. at 2–3.  Four years later, Doctors Express assigned its rights under the MDA to AFC Franchising and notified Purugganan of this assignment.  *Id.* at 2.  Eventually, AFC and Purugganan's relationship "soured" and Purugganan notified AFC of his intent to sue in either Connecticut or New York.  *Id.* at 3.  In response, AFC filed this declaratory judgment action in the Circuit Court of Shelby County, Alabama, on March 6, 2020, seeking a declaration that "the forum selection clause requires that any litigation be conducted in Alabama."  Purugganan then removed the suit to

2                    Tᴊᴏғʟᴀᴛ J., Concurring                    20-13849

the Northern District of Alabama on April 2, 2020,[1] and there asked
the District Court to either dismiss the case for lack of personal ju-
risdiction and improper venue or to transfer the case to the District
of Connecticut. *Id.* at 4. The Northern District of Alabama granted
the motion to dismiss the case for lack of personal jurisdiction and
AFC appealed, resulting in our decision above. *Id.* at 4–5.

But while this suit was ongoing, the parties have litigated
this exact same issue three different times in the District of Con-
necticut.[2] On March 17, 2020, eleven days after AFC filed this suit
in Shelby County, Purugganan filed suit against AFC in the District
of Connecticut, just as he told AFC he would. In his complaint,

---

[1] AFC also sought a declaration that the limited exclusivity clause of the MDA
allows AFC "to develop company-owned franchises in the territory embraced
by the Master Development Agreement." This second claim is what enabled
Purugganan to meet 28 U.S.C. § 1332(a)'s $75,000 amount in controversy re-
quirement for diversity jurisdiction. *See Federated Mut. Ins. Co. v. McKinnon
Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (explaining that plaintiffs seek-
ing declaratory relief under diversity jurisdiction must claim that the amount
in controversy exceeds $75,000). Likewise, this second claim also forms the
basis of AFC's standing, as we must decide whether the Northern District of
Alabama has personal jurisdiction over Purugganan before AFC can pursue its
second claim against him.

[2] As neither party put into evidence their filings in the District of Connecticut,
I take judicial notice of that Court's docket. *See Rothenberg v. Sec. Mgmt.
Co., Inc.*, 667 F.2d 958, 961 n.8 (11th Cir. 1982) ("Normally, an appellate court
will not consider facts that were not presented to the district court. We are,
however, free to take judicial notice of subsequent developments in cases that
are a matter of public record and are relevant to the appeal." (citations omit-
ted)).

20-13849            TJOFLAT, J., Concurring                3

Purugganan sought (among other claims) a declaration that the MDA does not permit suit in Alabama and/or that the MDA's floating forum selection clause is unenforceable. Predictably, AFC responded on April 9, 2020, by moving to dismiss the case for improper venue based on the forum selection clause under Fed. R. Civ. P. 12(b)(3).[3]

The Connecticut District Court analyzed AFC's motion to dismiss under the Second Circuit's four step test for determining whether a forum selection clause is valid and enforceable. *Purugganan v. AFC Franchising, LLC ("Purugganan I")*, No. 3:20-CV-00360(KAD), 2020 WL 2494718, at *2 (D. Conn. May 13, 2020) (citing *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019)). Under this test,

> a district court must consider three factors in determining whether the presumption of enforceability applies to a forum selection clause: whether (1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory or permissive; and (3) the claims and parties to the dispute are subject to the clause.

---

[3] As the Connecticut District Court correctly noted, Fed. R. Civ. P. 12(b)(3) was the incorrect vehicle for enforcing the forum selection clause as venue was proper in Connecticut. *AFC Franchising, LLC ("Purugganan I")*, No. 3:20-CV-00360(KAD), 2020 WL 2494718, at *1 (D. Conn. May 13, 2020) (citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014)). Instead, the Court construed AFC's Rule 12(b)(3) motion as a motion to dismiss under the doctrine of *forum non conveniens*. *Id.*

*Id.* (quoting *Fasano*, 921 F.3d at 335). "Satisfaction of these factors creates a presumption of enforceability, which can be overcome at step four by 'a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014)). Steps one and four of this test concern the enforceability of the forum selection clause and is governed by federal law, while steps two and three concern the interpretation of the clause and is governed by state contract law. *See Martinez*, 740 F.3d at 217–18.

Applying this test, the Connecticut District Court "answer[ed] the inquiry at both steps one and three in the negative and therefore [held that] the clause does not enjoy the presumption of enforceability." *Purugganan I*, 2020 WL 2494718, at *3. To start with, the Connecticut Court interpreted the forum selection clause as only applying to Doctors Express and not its assignees using essentially the same reasoning that Purugganan put forth here. *Compare id. and* Maj. Op. at 8–14. Consequently, the Court held that "interpreting the MDA's forum selection clause as providing adequate notice to the Plaintiff that he might have to litigate in the forum of the principal place of business of some future, unknown assignee of Doctors Express is simply a bridge too far . . . ." *Purugganan I*, 2020 WL 2494718, at *4. Similarly, the Court found that "AFC's enforcement of the forum selection clause was not, in any way, foreseeable to Purugganan" and thus AFC was not "closely related" enough to Purugganan to enforce the forum selection

20-13849          TJOFLAT, J., Concurring              5

clause against Purugganan under step three. *Id.* (citing *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 722–23 (2d Cir. 2013)). Finally, the Court concluded that it would "decline to enforce the forum selection clause at step four of the analysis" even if the forum selection clause was entitled to a presumption of enforceability under Second Circuit precedent. *Id.*

After the Connecticut District Court denied AFC's motion to dismiss, AFC moved for reconsideration. *Purugganan v. AFC Franchising, LLC ("Purugganan II")*, No. 3:20-cv-00360 (KAD), 2020 WL 3000761, at *1 (D. Conn. June 4, 2020). In deciding that motion, the Connecticut District Court made its views on the forum selection clause even plainer:

> [E]ven considering these arguments anew, the Court remains unpersuaded that the MDA's forum selection clause requires that this suit be litigated in Alabama. Indeed, perhaps the only analytical point that the Court might clarify from its prior memorandum of decision is that, in the Court's view, this is not a close call. What AFC asks this Court to do—apply a floating forum selection clause to a future, unknown and unidentified assignee of a contracting party absent express language extending the forum selection provision to that party's assignee or successor-in-interest— reaches so far beyond the available case law upholding floating forum selection clauses that even if the cases AFC cites were binding on the Court (which they are not), the Court would still find them

6                  TJOFLAT J., Concurring              20-13849

distinguishable for the very reasons articulated in its previous memorandum of decision.

*Id.* at ⋆2.  Notably, the Court also stated that

[E]ven if the Court were to stretch so far as to find the forum selection clause reasonably communicated to Purugganan and reasonably foreseeable with respect to its enforcement by AFC, federal common law permits the Court to decline to enforce a forum selection clause when to do so would create an injustice and contravene the policies otherwise favoring enforcement . . . . In short, to enforce the forum selection clause in these circumstances would be to promote the epitome of uncertainty—blindsiding the Plaintiff with an obligation to litigate in Alabama—a forum completely inscrutable from the text of the contract. *Cf. Jig Third Corp. v. Puritan Marine Ins. Underwriters Corp.*, 519 F.2d 171, 179 (5th Cir. 1975) ("One can buy a pig in a poke, but only if the parties fashion their contract and compound their words with the pig's possible infirmities in mind.").

*Id.* at ⋆3.

On top of its motion to dismiss and the subsequent motion for reconsideration, AFC also counterclaimed in its answer for a declaration that the proper venue under the forum selection clause is Alabama. *Purugganan v. AFC Franchising, LLC ("Purugganan III")*, No. 3:20-CV-00360 (KAD), 2021 WL 5301522, at ⋆2 (D. Conn. Nov. 15, 2021).  In response, Purugganan moved for a judgment on

20-13849              Tjoflat, J., Concurring                7

the pleadings dismissing this counterclaim based on the Connecticut District Court's prior decisions, leading to the parties litigating the forum selection clause for the third time in the District of Connecticut. *Id.* at *1. Unsurprisingly, the Connecticut District Court granted Purugganan's motion for judgment on the pleadings in relevant part. *Id.* at *2–3.

As a result of these decisions, the parties have now been litigating their claims in the District of Connecticut for almost two and a half years. In that time, the parties have engaged in extensive motion practice, including motions for temporary restraining orders and preliminary injunctions, as well as several court-ordered settlement negotiations. As of this writing, the Connecticut District Court is considering a partial motion for summary judgment argued last April. In short, both the parties and the Connecticut District Court have already invested a great deal of time and effort into litigating in Connecticut.

## II.

Our decision today will return this case to the Northern District of Alabama. On remand, the District Court will require Purugganan to answer AFC's complaint, and the parties will then proceed to litigate the case. Should that Court see fit to enter a declaratory judgment about the validity of the forum selection

8                         TJOFLAT J., Concurring                    20-13849

clause,[4] then and only then may AFC argue in the District of Connecticut that the forum selection clause issue is precluded by the Northern District of Alabama's decision.[5]

---

[4] The Supreme Court has made "clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S. Ct. 2137, 2140 (1995). This may well be a case where the "district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose." *Id.* at 288, 115 S. Ct. at 2143. After all, "declaratory judgment actions are equitable in nature." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). So, the District Court would consider all relevant equitable factors, including whether AFC already has an adequate remedy at law in the District of Connecticut and whether it is proper for a district court in Alabama to decide an issue before the District of Connecticut.

Another consideration would be the first-filed rule. Typically, the first-filed rule would favor having the Northern District of Alabama decide this declaratory judgment action absent compelling circumstances. *Id.* However, "[i]n determining whether compelling circumstances exist, we have recognized that for declaratory judgment actions 'one equitable consideration . . . is whether the . . . action was filed in apparent anticipation of the other pending proceeding.'" *Id.* (quoting *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.3d 1194, 1195 (11th Cir. 1982)). And we have explicitly held that district courts do not abuse their discretion when "dismiss[ing] a declaratory judgment action . . . filed in apparent anticipation of another proceeding." *Id.* at 1137.

[5] Of course, AFC may run to the District of Connecticut as soon as this opinion is published and erroneously argue that we have decided the forum selection clause issue for the Connecticut District Court with this opinion. *See Purugganan III*, 2021 WL 5301522, at *2 n.3 ("As the court has previously indicated, if the Eleventh Circuit Court of Appeals determines that the forum selection

20-13849                TJOFLAT, J., Concurring                9

So, unfortunately for AFC, our decision today will have no binding effect on the Connecticut District Court. All we decide is that the Northern District of Alabama has personal jurisdiction over Purugganan in this declaratory judgment action. What's more, AFC's self-inflicted legal woes will continue even if the Northern District of Alabama does grant AFC the declaratory relief it seeks. Should the Northern District of Alabama grant declaratory relief and declare the forum selection clause valid, the Connecticut District Court will then have to independently determine (after AFC amends it answer to plead issue preclusion) whether (1) to give that decision preclusive effect under the Second Circuit's issue preclusion test, (2) if so, whether the forum selection clause is enforceable under Second Circuit precedent, not Eleventh Circuit precedent, under the circumstances presented in Connecticut, and (3) if so, whether the Connecticut District Court should exercise its discretion (considering the time already invested in Connecticut) to transfer the case under 28 U.S.C. § 1404(a) or dismiss under the doctrine of *forums non conveniens*. Then, any decision the Connecticut District Court makes will be reviewed by the

---

clause is enforceable by AFC against Purugganan, then this Court will likely honor that determination, regardless the Court's own differing opinion."). However, all we decide today is whether the Northern District of Alabama has personal jurisdiction over Purugganan, i.e., that Purugganan is present in Alabama. The Northern District of Alabama, not the Eleventh Circuit, must decide whether to issue a declaratory judgment that AFC could then use against Purugganan in the District of Connecticut. Then, the Connecticut District Court would have to perform the full analysis that I outline here.

10                    TJOFLAT J., Concurring                    20-13849

Second Circuit, either through an appeal from final judgment or an interlocutory appeal.

Let's take this analysis step-by-step. To start with, issue preclusion "operate[s] across a two-lawsuit continuum." *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1214 (11th Cir. 2017) (en banc) (Tjoflat, J., dissenting). As I have previously explained,

> First, parties litigate a dispute to a final judgment on the merits. Second, in a later, separate suit between the parties, one party brings to court evidence of an earlier judgment and contends that issue . . . preclusion should apply to prevent her opponent from litigating a previously decided issue . . . . In this two-lawsuit scheme, the first court is the "rendering" court and the second is the "recognizing" court.

*Id.* at 1214–15 (Tjoflat, J., dissenting). If the Northern District of Alabama grants declaratory relief, then it would be the rendering court and the Connecticut District Court would be the recognizing court. So, before giving the declaratory judgment preclusive effect, the Connecticut District Court would have a duty to review the record created in the Northern District of Alabama and then to analyze the judgment under the Second Circuit's issue preclusion test, including whether the issue before the District of Connecticut was *actually litigated* [6] in the Northern District of Alabama. *See*

---

[6] I emphasize the "actually litigated" part of the issue preclusion test because I doubt the parties will actually litigate in the Northern District of Alabama the

20-13849                TJOFLAT, J., Concurring                11

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) ("Issue Preclusion is permissible as to a given issue if: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding [by the rendering court]; (3) the party had a full and fair opportunity to litigate the issue; (4) the resolution of the issue was necessary to support a valid and final judgment on the merits; and (5) application of the doctrine is fair." (alterations omitted)).  Further, the Northern District of Alabama (and this Court) cannot decide what preclusive effect, if any, a declaratory judgment would have in the District of Connecticut.  *Graham*, 857 F.3d at 1192 (Tjoflat, J., dissenting) ("Courts tasked with determining whether to enforce a rendering court's judgment make those determinations themselves.").

Should the Connecticut District Court find that the Northern District of Alabama's declaratory judgment ought to be given some preclusive effect, it would still need to independently

---

*identical* issue that the District of Connecticut will have to consider.  To "actually litigate" the Connecticut District Court's issue, the Northern District of Alabama would need the whole ball of wax from the Connecticut case.  At the least, this would include all the relevant evidence from the District of Connecticut and consideration of the circumstances presented in Connecticut at the time of the Northern District of Alabama's judgment.  The District (or in this case, Magistrate) Judge for the Northern District of Alabama would essentially have to pretend he was designated to sit in the District of Connecticut to hear this case.  Considering the advanced stage of the Connecticut litigation, the Northern District of Alabama may well be better off simply refusing to grant declaratory judgment.

12                    TJOFLAT J., Concurring                    20-13849

determine whether to enforce the forum selection clause in the circumstances before it under Second Circuit precedent, not Eleventh Circuit precedent. Indeed, the Second Circuit's test appears to be materially different from this Court's test. Our Court simply decides whether the forum selection clause applies as a matter of contract interpretation and then whether "enforcement would be 'unfair or unreasonable under the circumstances.'" Maj. Op. at 15 (quoting *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1297 (11th Cir. 2021)). By contrast, the Second Circuit has a three-step test for determining whether a forum selection clause is "presumptively enforceable," and then an additional step where courts decide whether the presumption can be overcome by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Martinez*, 740 F.3d at 217 (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007)). In *Purugganan I* and *II*, the Connecticut District Court declined to enforce the forum selection clause under steps one, three, and four of the Second Circuit test as it has been interpreted by Second Circuit caselaw, and there is nothing stopping the Connecticut District Court from doing so again even if it accepts the Northern District of Alabama's potential future declaratory judgment as preclusive.

Further, even if the Connecticut District Court decides the forum selection clause is enforceable under Second Circuit precedent, it would still have to independently decide whether to transfer or dismiss the case under the public interest factors. As the

20-13849        TJOFLAT, J., Concurring        13

Supreme Court explained in *Atlantic Marine*, the effect of a valid and enforceable forum selection clause is that all the private factors under § 1404(a) and the doctrine of *forum non conveniens* "weigh in favor of the transfer" or dismissal. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 67, 134 S. Ct. 568, 584 (2013). Thus, Purugganan would have to show that the "public-interest factors overwhelmingly disfavor a transfer" to defeat a § 1404(a) motion. *Id.* But Purugganan could, theoretically, make such a showing, and doing so would also allow the Connecticut District Court to refuse to enforce the forum selection clause.

Finally, whatever decision the Connecticut District Court makes will inevitably be reviewed by the Second Circuit. Should the Connecticut District Court refuse to enforce the forum selection clause (for whatever reason), the case will proceed in Connecticut as normal and its decision will be reviewable on appeal from final judgment. Should the Connecticut District Court dismiss the case under the doctrine of *forums non conveniens*, then its decision will also be immediately reviewable by the Second Circuit. Even if the Connecticut District Court decides to transfer the case to an Alabama district court under § 1404(a), Purugganan could still seek review in the Second Circuit by petitioning for a writ of mandamus. *Golconda Min. Corp. v. Herlands*, 365 F.2d 856, 857 (2d Cir. 1966) ("A petition for mandamus rather than a request for leave to appeal under 28 U.S.C. § 1292(b) is the proper procedure to seek review of a trial court's disposition of a § 1404(a) motion, challenged for abuse of discretion."). Either way, the Second Circuit

14                   TJOFLAT J., Concurring                   20-13849

will ultimately have the final say on whether to enforce the forum selection clause, not this Circuit.[7]

### III.

The MDA's forum selection clause has now been litigated five times: three times in the District of Connecticut, once in the Northern District of Alabama, and once in the Eleventh Circuit. Before this litigation is over, this issue could easily be litigated four times more: (1) in the Northern District of Alabama on remand from this appeal, (2) again in the Eleventh Circuit once the Northern District of Alabama makes its decision, (3) again in the District of Connecticut following the Northern District of Alabama's decision, and (4) finally, in the Second Circuit. Obviously, this is not how the American legal system is supposed to work. In the typical case, important issues are litigated twice, not nine times. AFC's atypical litigation strategy has thus cost itself, Purugganan, and the federal judicial system a great deal of time and money for little to no benefit.

Imagine if AFC had conducted this litigation in a sensible manner. Once Purugganan informed AFC of his intention to sue in Connecticut or New York, a wise lawyer would have realized that AFC must litigate the forum selection clause in whatever court Purugganan filed in regardless of any declaratory judgment action AFC might file in Alabama. So, instead of filing this suit in

---

[7] Unless, of course, the Supreme Court decides to grant certiorari.

20-13849               TJOFLAT, J., Concurring                15

Alabama, the wise lawyer would have simply prepared his arguments under the forum selection clause and allowed Purugganan to file suit wherever he wished, as is his right as the real plaintiff in this litigation. Then, once Purugganan filed his suit in the District of Connecticut, AFC could have moved for transfer or dismissal based on the forum selection clause and petitioned for a writ of mandamus from the Second Circuit had the Connecticut District Court still denied AFC's motion. This course of action would have resolved the forum selection clause issue in a timely and efficient manner.

More importantly, AFC's litigation strategy has detrimental impacts on the federal judicial system beyond mere inefficiency. It is not the job of the Northern District of Alabama or the Eleventh Circuit to decide whether the District of Connecticut should apply the MDA's forum selection clause and transfer Purugganan's action to Alabama. That responsibility lies solely with the District of Connecticut and the Second Circuit. Attempting to use a declaratory judgment action to have a district or circuit court "grade the papers" of a district court outside its circuit undermines respect for the federal judiciary and pushes the boundaries of federal court jurisdiction. Indeed, our opinion today is about as close as a federal court can get to issuing an advisory opinion without *technically* violating Article III of the U.S. Constitution.

I do not know how this litigation will ultimately be resolved. Certainly, our decision today does little for the parties, the Northern District of Alabama, the Connecticut District Court, and the

16                    TJOFLAT J., Concurring                    20-13849

Second Circuit.  Hope, however, springs eternal, and perhaps future litigants will be able to avoid the perils that AFC has inflicted upon itself.